Joseph D. SCARSO, Joseph R.
Scarso, etc., Plaintiffs,

v.

The CUYAHOGA COUNTY DEPART-
MENT OF HUMAN SERVICES, Mark
Landau, etc., James Mack, etc., The
Honorable Betty Willis Ruben, etc.,
Valerie Burke, etc., Richard Graham,
etc., William Kurtz, etc., Martin Keen-
an, etc., Donna Lindsey, Defendants.

No. C88–402.

United States District Court,
N.D. Ohio, E.D.

Oct. 31, 1989.

**382**

James R. Willis, Willis & Blackwell, Cleveland, Ohio, for plaintiffs.

Jeffrey I. Sherwin, Colleen C. Cooney, Cuyahoga County Prosecutor's Office, Cleveland, Ohio, for Cuyahoga County Dept. of Human Services, Landau, Mack, Burke, Graham and Kurtz.

Burt Fulton, Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, for Ruben.

David Irwin Sindell, Sr., William J. Novak, Sindell, Rubenstein, Einbund, Pavlik, Cleveland, Ohio, for Keenan.

MEMORANDUM OF OPINION RE: GRANTING DEFENDANTS' MOTIONS TO DISMISS AND FOR SANCTIONS

KRENZLER, District Judge.

This case evolves from Joseph D. Scarso's ("plaintiff") obsession with obtaining legal custody of his son, Joseph R. Scarso ("Joey").[1]

Plaintiff's amended complaint alleges violation of 42 U.S.C. § 1983 and several pendent state claims. The defendants are Judge Betty Willis Ruben ("Judge Ruben") of the Juvenile Division of the Court of Common Pleas, the Cuyahoga County De-

partment of Human Services ("CCDHS"), various employees of CCDHS and the Juvenile Court, the mother of the child, Donna Lindsey, and her attorney, Martin Keenan.

The gist of plaintiff's § 1983 action is that the defendants conspired to deprive plaintiff of the physical possession of his son, Joey, without due process of law, during the course of a presently pending child abuse proceeding initiated by CCDHS.

### I. Motions

Pending before the Court are (1) a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), and a motion for summary judgment, pursuant to Fed.R.Civ.P. 56, filed by Judge Ruben; (2) a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), filed by CCDHS, CCDHS employees and Juvenile Court employees; and (3) a motion to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), filed by attorney Martin Keenan. In addition, the above defendants have all moved for sanctions, pursuant to Fed.R.Civ.P. 11.

For the reasons stated below, this Court grants the above motions to dismiss with respect to the § 1983 claim. Because no federal claims remain, this Court declines to exercise its pendent jurisdiction over the remaining pendent claims and shall dismiss them, without prejudice. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### II. Facts

■ It is noted initially that the Court takes judicial notice of the relevant facts because they are all a matter of public record.

Joseph D. Scarso and Donna Lindsey were married in 1980. In 1981, while living in Florida, their son, Joey, was born. In 1984, the parties were divorced. In December 1985, following a custody battle in two states,[2] the Florida court awarded perma-

---

1. Joseph D. Scarso filed the action on behalf of himself and his son, Joseph R. Scarso.

2. Plaintiff filed an application for custody in the Juvenile Division of the Court of Common Pleas, Ashtabula County, Ohio, in September 1983. Though initially granting temporary custody to plaintiff's mother, the Court eventually

ordered Joey returned to Donna Lindsey in Florida because Florida was the more convenient forum for deciding the custody of Joey. Plaintiff appealed the decision to the Court of Appeals for the Eleventh District of Ohio. The trial court's decision was upheld. It is noted that despite valid court orders directing plaintiff

nent custody of Joey to Donna Lindsey, a Florida resident. Plaintiff, an Ohio resident, was awarded three months visitation annually, which were to be exercised in Ohio.

Pursuant to the Florida court order, Donna Lindsey sent Joey to visit his father in Cleveland, Ohio, on June 1, 1986. On August 21, 1986, at plaintiff's request, CCDHS filed a child abuse complaint (Case No. 8608869) in the Juvenile Division of the Cuyahoga County Court of Common Pleas. The complaint alleged that "during the time of the child's residence with the mother in Florida, the child was sexually abused by mother and child's stepfather.... [S]hould the child be returned pursuant to the Florida divorce decree, the child would again be in danger of sexual abuse...." [3]

On August 25, 1986, Judge Ruben granted emergency temporary custody of Joey to CCDHS pending an investigation of the abuse complaint. CCDHS, in turn, placed Joey with his father.

On October 8, 1986, the Florida court issued an order directing plaintiff to return Joey to Florida where the Department of Health and Rehabilitative Services would take temporary custody while it investigated the sex abuse allegations. Plaintiff ignored this order. On October 23, 1986, Donna Lindsey, through her attorney, Martin Keenan, filed a motion to dismiss or, in

the alternative, a motion to transfer the child abuse complaint to Florida.

On January 30, 1987, Judge Ruben held a hearing on the motion. At that hearing CCDHS moved to dismiss its complaint for lack of evidence.

Judge Ruben held the motion to dismiss of CCDHS in abeyance, yielded jurisdiction to the Florida court and stayed the proceedings pending resolution by the Florida court. In addition, Judge Ruben ordered CCDHS, which at this juncture still had temporary custody of the child, to oversee arrangements for returning Joey to Florida.

On February 2, 1987, plaintiff filed a notice of appeal of this decision in the Court of Appeals, Eighth District. Though initially granting a motion for stay of Judge Ruben's order, the Court of Appeals vacated the stay on February 24, 1987.

For the next eight months, execution of Judge Ruben's January 30, 1987, order was blocked by a series of legal gambits instituted by plaintiff and his counsel. The methods used included affidavits of prejudice and writs of prohibition filed in the Supreme Court of Ohio.[4]

Throughout the proceedings, Judge Ruben issued a total of three orders directing Joey's return to Florida. Each time Judge Ruben issued an order, no stay or other legal impediment existed that would have limited her authority to issue and enforce

---

to surrender Joey to Donna Lindsey, plaintiff thwarted the orders by refusing to comply. Eventually, in March 1985, a bench warrant was issued for plaintiff's arrest. Finally, plaintiff returned Joey to Florida in May 1985. He then filed an application for custody in the Florida court. In support of his application for custody, plaintiff alleged that Joey had been sexually abused by his pre-adolescent aunt. The Florida court found the allegation not worthy of any weight.

3. This was the second time plaintiff used the allegation of sex abuse to obtain custody of Joey. *See* footnote 2, *supra.* Prior to the filing of the child abuse complaint, plaintiff retained a psychologist to examine the child. The psychologist's report served as the basis for the child abuse complaint.

4. Plaintiff filed the affidavit of prejudice on March 4, 1987, and the petition for a writ of prohibition on March 6, 1987. Chief Justice

Moyer of the Supreme Court of Ohio dismissed the petition for a writ of prohibition on September 13, 1987. On October 5, Judge Ruben issued her second order directing the return of the child to Florida. On or about October 8, 1987, while Judge Ruben was away from the court, plaintiff filed an emergency application for stay ex parte in the Juvenile Court. Judge Rocco granted the motion. On October 13, 1987, plaintiff filed a second affidavit of prejudice with the Supreme Court of Ohio. It was dismissed on October 16, 1987. Then, on October 22, 1987, plaintiff tried his luck with the Eighth District Court of Appeals by filing another petition for writ of prohibition. That court dismissed it on December 22, 1987.

Plaintiff next filed his third motion for stay of execution in the Eighth District Court of Appeals on December 22, 1987. It was granted on January 5, 1988.

such an order. Finally, on February 4, 1988, the Court of Appeals, in an unfortunate decision, reversed Judge Ruben's January 30, 1987, order and remanded the case for an evidentiary hearing on the issue of whether it would be in the child's best interest to exercise jurisdiction and act on the child abuse complaint. In May 1988, Judge Ruben recused herself because plaintiff filed the instant § 1983 action in this court.

## III. *Discussion*

Plaintiff premises his § 1983 action on two theories: (1) Judge Ruben had no authority to order Joey's return to Florida in her January 30, 1987, order because she was without subject matter jurisdiction; and (2) Judge Ruben had no authority to issue subsequent orders directing Joey's return to Florida because once plaintiff filed a notice of appeal on February 4, 1987, Judge Ruben's jurisdiction over the matter ceased. The liability of the remaining defendants is premised upon their efforts at enforcing the allegedly void order. Plaintiff thus concludes that defendants' actions constituted a conspiracy intended to deprive him of the physical possession of his son without due process of law.

At this juncture it is appropriate to briefly discuss several applicable § 1983 concepts.

To maintain a § 1983 action, a defendant must have acted under color of state law and the conduct complained of must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution. *Parrett v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir.1983), *rev'd and remanded sub nom*, *Brandon v. Hall*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Haag v. Cuyahoga County*, 619 F.Supp. 262, 271 (N.D. Ohio 1985).

■ Where the action is premised upon violations of procedural due process resulting in a deprivation of a substantive constitutional right, the complaint must allege (1) a deprivation of a substantive constitutional right, (2) that the deprivation occurred under color of state law, and (3) that the state remedy was inadequate, both in form and in substance, *Haag*, 619 F.Supp. at 271. With respect to the first factor, it is clear that the complaint must allege an injury in fact. Where a complaint fails to allege an actual deprivation of the substantive constitutional right in issue, it fails to state a claim upon which relief can be granted. Regarding the inadequacy of the state remedy, a mere allegation that the state remedy is inadequate is insufficient. The plaintiff must allege facts, in specific detail, upon which the plaintiff relies to demonstrate the inadequacy of the state remedy. *Eaton v. City of Solon*, 598 F.Supp. 1505, 1512 (N.D.Ohio 1984).

■ Finally, where the § 1983 action is against public officials who may be entitled to absolute or qualified immunity, the complaint must state with factual detail and particularity "the basis for ... why the defendant official cannot successfully maintain the defense of immunity." *Ginter v. Stallcup*, 641 F.Supp. 939, 974 (E.D. Ark.1986), quoting from *Elliot v. Perez*, 751 F.2d 1472 (5th Cir.1985), affirmed in part and reversed in part, 869 F.2d 384 (8th Cir.1989).

In granting the defendants' respective motions to dismiss, this Court is enforcing the doctrine of absolute judicial immunity, as well as the statutory absolute immunity accorded participants involved in child abuse proceedings codified at Ohio Rev. Code Ann. § 2151.421. In addition, the Court recognizes the existence of an adequate state remedy to address the alleged wrongs plaintiff asserts in his amended complaint, i.e., denial of procedural due process. Indeed, this Court cannot ignore the fact that plaintiff has utilized that remedy by appealing Judge Ruben's January 30, 1987, decision. He has therefore exercised and benefited from the procedural due process mechanism available to a litigant unhappy with a trial judge's decision.

■ Finally, this Court is of the opinion that the amended complaint is wholly insufficient. It simply fails to present sufficient allegations to state a § 1983 cause of ac-

tion. Incredibly, the amended complaint fails to allege that the claimed denial of procedural due process resulted in the deprivation of the constitutional right for which plaintiff seeks redress, i.e., loss of the "physical possession" of his son. Indeed, there is no substantive constitutional right to *physical possession* of a child. In *Haag*, 619 F.Supp. at 276, this Court stated that a parent's right to *custody* or *visitation* with their child is a constitutionally protected liberty interest that cannot be interfered with absent due process of law. The expression "physical possession" of a child is, however, without legal meaning or significance absent an allegation that the parent has either legal custody or rights of visitation. It is custody and visitation which are protected liberty interests. Plaintiff did not and could not assert that he had legal custody or even a right of visitation. At the time Judge Ruben issued her January 30, 1987, order, CCDHS had legal custody of the child by virtue of Judge Ruben's August 25, 1986, order. Prior to that, Donna Lindsey had legal custody and plaintiff's visitation rights had expired on September 1, 1986. It is thus clear that plaintiff's amended complaint failed to allege an essential element of a § 1983 action, that being a deprivation of a substantive constitutional right.

### Judicial Immunity and Immunity Pursuant to Ohio Rev.Code Ann. § 2151.421

Imagine a society where a judicial officer could not make a decision or issue an order without facing a lawsuit by an unhappy or revengeful litigant. Clearly, the administration of justice would cease to exist. The Supreme Court recognized these consequences long ago in *Randall v. Brigham*, 7 Wall 523, 19 L.Ed. 285 (1869), in *Bradley v. Fisher*, 13 Wall 335, 20 L.Ed. 646 (1872), and recently in *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). The doctrine of absolute judicial immunity has thus become one of the hallmarks and guardians of the proper administration of justice. As stated in *Bradley v. Fisher*, 13 Wall, at 351, 20 L.Ed. at 646:

Judges are not liable to civil actions for their judicial acts even when such acts are in excess of their jurisdiction and are alleged to have been done maliciously or corruptly.

An independent judiciary is critical to the rule of law in our society. A judge must be allowed to "exercise the authority vested in him [to] be free to act upon his own convictions, without apprehension of the personal consequences to himself." *Bradley v. Fisher*, 13 Wall at 347, 20 L.Ed. 646. Failure to protect judges from civil liability would inevitably lead to judicial paralysis. The existence of the judicial system as the proper forum for resolution of conflicts would thus be threatened.

Absolute judicial immunity was first held applicable in § 1983 actions in *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). It was applied again by the Supreme Court in another § 1983 case. In *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), the Court held that a defendant judge is impervious to civil liability for his judicial acts as long as "jurisdiction over the subject matter is invested by law in the judge or in the court he holds...." *Stump v. Sparkman*, 435 U.S. at 356, n. 6, 98 S.Ct. at 1104, n. 6, quoting *Bradley v. Fisher*, 13 Wall at 351–52, 20 L.Ed. at 651. The immunity thus accorded does not disappear even if the judicial action is in excess of a judge's jurisdiction, or the action is flawed by serious procedural error. *Stump v. Sparkman*, 435 U.S. at 359, 98 S.Ct. at 1106. *See also Doe v. McFaul*, 599 F.Supp. 1421, 1431 (N.D.Ohio 1984); *Fast v. Wead*, 509 F.Supp. 744 (N.D.Ohio 1981).

In addition to protecting judges from civil liability, absolute judicial immunity shields agents of the court who are acting under the direction of the court. *Wholesale Electric Supply, Inc. v. Robusky*, 22 Ohio St.2d 181, 258 N.E.2d 432 (1970).

As stated by the Supreme Court of Ohio: The speedy administration of justice requires that the mandates of all courts and tribunals and persons possessing judicial power should be executed promptly and without hesitation by those to whom

they are directed. To secure this, it is necessary that the law should throw its protecting mantle around those executing its mandates and hold them harmless so long as they do only what they are commanded to do, without requiring them to determine whether it is rightly and properly commanded or not.

*Wholesale Electrical Supply,* 22 Ohio St.2d at 184, 258 N.E.2d 432, quoting *Fawcet v. Linthecum,* 7 C.C. 141, 143 (1893). Once again, the basis of providing absolute immunity to those executing court mandates is premised upon concern for the rule of law. Justice would not be served by requiring agents of the court to analyze the propriety of a judge's directive.

In analyzing whether absolute judicial immunity protects a judge from civil liability, the proper inquiry is (1) whether the judge had subject matter jurisdiction over the case in issue, and (2) whether the action taken was a judicial action, *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099.

Reference to the appropriate enabling legislation typically answers the first question. In determining whether the action taken by a judge is a judicial action, the court looks at the "nature of the act itself, i.e., whether it is a function normally performed by a judge, and ... whether [the parties] dealt with the judge in his judicial capacity." *Stump v. Sparkman,* 435 U.S. at 362, 98 S.Ct. at 1107.

As noted above, where a § 1983 action has been asserted against public officials who may be entitled to absolute or qualified immunity, the complaint must state with factual specificity the bases upon which the potentially immune defendant will be unable to successfully maintain the defense of immunity. *Ginter,* 641 F.Supp. at 974. Similarly, in a case involving qualified immunity, the Sixth Circuit Court of Appeals held that where a plaintiff fails to allege sufficient allegations to withstand the qualified immunity defense, it is proper to grant a motion to dismiss. *Dominique v. Telb,* 831 F.2d 673 (6th Cir.1987). The Court stated that a plaintiff must plead such ... facts or allegations that show not only violations of his constitutional

rights, but also that these rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was [violating the plaintiff's constitutional rights].

*Id.* at 676 (citing *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

This Court, in *Martin v. City of Eastlake,* 686 F.Supp. 620 (N.D.Ohio 1988), applied the same principle and granted the defendant's motion for summary judgment.

■ In a case involving absolute judicial immunity, the plaintiff must plead, in addition to the facts demonstrating the constitutional violation, facts demonstrating (1) the lack of subject matter jurisdiction of the judge; and (2) that the action taken did not constitute a judicial action. Failure to plead these details will support dismissal of the complaint for failure to state a cause of action.

■ In applying these principles to the instant case, this Court is cognizant of the rule that the allegations contained in a complaint must be regarded as true unless the allegations are at odds with facts judicially known to the court. *Blackburn v. Fisk University,* 443 F.2d 121, 123 (6th Cir.1971). To be sure, in ruling on a motion to dismiss, a court may take judicial notice of the laws of a state and records of state court proceedings. *Phillips v. Bureau of Prisons,* 591 F.2d 966 (D.C.Cir. 1979); *Iacaponi v. New Amsterdam Cas. Co.,* 379 F.2d 311 (3d Cir.), *cert. denied,* 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 849 (1967).

In analyzing plaintiff's amended complaint, this Court observes initially that it consists essentially of bold legal conclusions. Additionally, however, the few factual allegations made will not be accepted as true by this Court because they are at odds with facts judicially known to this Court. Finally, it fails to comply with Fed. R.Civ.P. 8(a) requiring a short and plain statement showing that the pleader is enti-

tled to relief. These defects alone justify dismissal under Fed.R.Civ.P. 12(b)(6).

The key allegation upon which plaintiff attempts to circumvent the doctrine of judicial immunity is:

At that hearing [January 30, 1987] Defendant Ruben ruled that the Court had no subject matter jurisdiction.... All of the defendants knew on January 30, 1987 that a Court without subject matter jurisdiction can enter no valid order other than dismissal.

■ In taking judicial notice of Judge Ruben's January 30th order, it is noted that she did not rule that subject matter jurisdiction was absent. She simply yielded jurisdiction to the Florida court because it was the more convenient forum to hear the child abuse complaint.

In addition, Ohio Rev.Code Ann. § 2151.23 provides that the juvenile court has exclusive original jurisdiction with respect to child abuse complaints filed by a County Department of Human Human Services. Clearly then, the allegation that Judge Ruben lacked subject matter jurisdiction to hear the child abuse complaint is at odds with Ohio law.

This Court finds it ironic that in his appeal of Judge Ruben's order to the Eighth District Court of Appeals, plaintiff argued that the Juvenile Court not only had jurisdiction but, additionally, that Judge Ruben erred in yielding it to the Florida court. The Court of Appeals agreed with plaintiff in its February 4, 1988, decision reversing Judge Ruben's order. It ruled that she had jurisdiction over the case. In view of these facts, plaintiff's allegation that Judge Ruben lacked subject matter jurisdiction is without merit and will not be accepted as true. The remaining allegations in the complaint simply fail to specify with sufficient factual detail the basis for Judge Ruben's inability to assert absolute judicial immunity as a defense.

■ The § 1983 liability of CCDHS, CCDHS employees, and the Juvenile Court employees is premised upon their efforts at enforcing Judge Ruben's order. Clearly, those defendants are entitled to the protection afforded Judge Ruben under the doctrine of absolute judicial immunity. Even if they cannot be considered agents of the Court, these defendants would be protected from liability pursuant to state statute.

■ In *Haag*, 619 F.Supp. at 283, this Court recognized that anyone participating in a judicial proceeding involving a child abuse complaint is absolutely immune from civil liability. The protection provided shields defendant Martin Keenan as well. *See* Ohio Rev.Code Ann. § 2151.421. Plaintiff's complaint fails to state any facts that warrant a departure from this rule and, therefore, plaintiff's amended complaint cannot survive.

## IV. *Conclusion*

### A. Dispositive Motions

For the reasons stated above, this Court grants the defendants' motions to dismiss. In doing so, this Court took judicial notice of the material facts. In view of those facts the law is clear: the doctrine of absolute judicial immunity mandates dismissal because Judge Ruben had subject matter jurisdiction over the child abuse proceedings at issue and her order directing the child's return to Florida was a judicial action. The immunity thus accorded to Judge Ruben also protects the defendant Juvenile Court employees and CCDHS, and its employees. In addition, those defendants are absolutely immune from civil liability pursuant to Ohio Rev.Code Ann. § 2151.421.

Defendant Martin Keenan is likewise immune from civil liability under the same provision. Moreover, this Court concludes, on the basis of the judicially noticed facts, that he is a private person and therefore not a state actor. Accordingly, a § 1983 action cannot be maintained against him. Despite the fact that defendant Donna Lindsey has not filed a motion to dismiss, this Court, *sua sponte*, shall dismiss the § 1983 action against her for the same reasons.

## B. Sanctions

Defendant Judge Ruben is asking this Court to impose sanctions upon the plaintiff pursuant to Fed.R.Civ.P. 11 ("Rule 11") and 42 U.S.C. § 1983. The remaining defendants request sanctions pursuant to Rule 11.

Rule 11 functions as an attorney's guarantee that to the best of his knowledge, information and belief after reasonable inquiry, the pleading at issue is well grounded in fact, is warranted by existing law or good faith argument for the extension, modification or reversal of existing law and that it is not submitted for any improper purpose such as harassment or to cause unnecessary delay. In civil rights cases, 42 U.S.C. § 1988 likewise provides for sanctions against losing plaintiffs if their claims are frivolous, unreasonable or without foundation. *Christianburg Gormet Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

 This Court observes that Joseph D. Scarso, aided and abetted by his counsel, has used and abused the judicial system in Ohio in an effort to pirate the legal custody of his son from Donna Lindsey, the child's mother. The litigation history demonstrates that plaintiff is unwilling to accept defeat. When the Eighth District Court of Appeals reversed Judge Ruben's January 30, 1987 order, it remanded the case to her for further proceedings. Aware that his previous attempts at removing Judge Ruben from presiding over the child abuse matter had all failed, a new strategy at accomplishing that goal was implemented. That strategy is this case. Its purpose was to put Judge Ruben in a position where she had no choice but to recuse herself from further participation in the child abuse matter.

An additional goal was to delay resolution of the child abuse case in order to usurp the physical custody of the child from Donna Lindsey. By filing this case, plaintiff has accomplished his goals. Judge Ruben recused herself, the child abuse proceeding has been delayed and, as of this date, the child remains in plaintiff's care. It is thus clear to this Court that plaintiff's claims were filed for an improper purpose. Moreover, this Court's analysis of the § 1983 claim demonstrates that it was not well grounded in fact nor warranted by existing law or good faith argument for the extension, modification or reversal of existing law, in light of the records of the state court proceedings and the well-established doctrine of absolute judicial immunity and the state statutory immunity accorded participants in child abuse proceedings.

In *Huettig & Schromm, Inc. v. Landscape Contractors Council*, 582 F.Supp. 1519, 1522 (N.D.Cal.1984), the court, in awarding Rule 11 sanctions, correctly stated:

> Plaintiff's counsel's conduct in this case cannot be attributed to enthusiastic or creative advocacy of their client's cause. The fact is that counsel knew or should have known that ... their client [did not have] a cause of action.... Attorneys do not serve the interests of their clients, or the profession, or of society when they assert claims and defenses grounded on nothing but tactical or strategic expediency.

The same can be said of plaintiff's counsel's conduct in the instant case. Rarely has a case more deserving of sanctions come before this Court. Therefore, the defendants' motions for the same will be granted.

The proper sanction in this case is to require plaintiff and his counsel to pay all of the defendants' attorney's fees and costs. The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, authorizes this Court to award reasonable attorney's fees to the prevailing party in a civil rights case. In determining the proper amount to award, the relevant factors are the number of hours of service provided together with the fair market value of those services. *Northcross v. Board of Education*, 611 F.2d 624, 636, 638 (6th Cir.1979).

This Court has reviewed the affidavits relating to Judge Ruben's attorneys fees and costs and finds that the hourly rates and number of hours expended by her counsel in defending her to be reasonable.

Accordingly, this Court will sanction plaintiff and his counsel in the amount of $11,-350.45. The remaining defendants are instructed to submit affidavits delineating their attorneys fees. Thereafter, this Court will further sanction plaintiff and his counsel by requiring them to pay the remaining defendants reasonable attorneys fees and costs.

## ORDER OF DISMISSAL AND FOR SANCTIONS

This Court, having separately filed its Memorandum of Opinion Re: Granting Defendants' Motions to Dismiss and for Sanctions, hereby grants the defendants' motions to dismiss and dismisses, with prejudice, the plaintiff's § 1983 claims. Since no federal claims remain, the Court declines to exercise its pendent jurisdiction over the pending state law claims and dismisses them, without prejudice. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, this action is dismissed. Plaintiff to pay costs.

It is further ordered that plaintiff, Joseph D. Scarso, and his attorneys, Linda A. Willis and James R. Willis, pay defendant, Judge Betty Willis Ruben, her reasonable attorney fees and costs, that amount being $11,350.45, pursuant to Fed.R.Civ.P. 11 and 42 U.S.C. § 1988.

IT IS SO ORDERED.