James SHELTON, et al., Plaintiffs,

v.

Chris WALLACE, et al., Defendants.

No. C–1–94–405.

United States District Court,
S.D. Ohio,
Western Division.

April 19, 1995.

David Ian Thompson, Cincinnati, OH, for Jimmie Shelton, Inetha Shelton.

Neal David Baker, Dinsmore & Shohl, Cincinnati, OH, for Chris Wallace and Joe Staft.

Philip Lewis Zorn, Jr., Asst. Pros. Atty., Cincinnati, OH, for Simon Leis, The Com'rs of Hamilton County and Dale Honnert.

Robert Forrest Cowdrey, Jenks, Surdyk & Cowdry Co., Dayton, OH, for Bill Bridgeford, Kurk Nordblum and Fred Ramono.

Lawrence Edward Barbiere, Schroeder Maundrell Barbiere & Powers, Cincinnati, OH, for Clayton Smith.

Christopher A Benintendi, Dinsmore & Shohl, Cincinnati, OH, for John Benner.

## *ORDER*

CARL B. RUBIN, District Judge.

This matter is before the court upon the partial motion for summary judgment filed by plaintiffs James and Inetha Shelton (the Sheltons) and upon motions for summary judgment filed by defendants John Benner (Benner), member of the Village of the Fairfax, Ohio, Police Department; Joseph Staft (Staft), a member of the Blue Ash, Ohio, Police Department; Chris Wallace (Wallace), member of the Blue Ash, Ohio, Police Department and Lieutenant and field commander of the Drug Abuse Reduction Task Force

(DART); Clayton Smith (Smith), member of the Hamilton County, Ohio, SWAT team; the Commissioners of Hamilton County (Commissioners); Simon L. Leis (Leis), Sheriff of Hamilton County, Ohio; Dale Honnert (Honnert), deputy sheriff of Hamilton County, Ohio; Bill Bridgeford (Bridgeford), member of the Wyoming, Ohio, Police Department; Kirk Nordbloom (Nordbloom), member of the Montgomery, Ohio, Police Department; and Fred Ramono (Ramono), member of the Springdale, Ohio, Police Department. As set forth, *infra*, this court grants defendants' motions for summary judgment. The plaintiffs' partial motion for summary judgment is denied.

## I. PROCEDURAL SUBMISSIONS FOR SUMMARY JUDGMENT

The Sheltons filed their motion for partial summary judgment on Feb. 1, 1995. Doc. No. 30. Smith filed his response in opposition to such motion on Feb. 14, 1995. Doc. No. 40. Staft and Wallace filed their response in opposition on Feb. 24, 1995. Doc. No. 43. Benner filed his response in opposition on Feb. 27, 1995. Doc. No. 44. The Commissioners, Leis and Honnert filed their motion in opposition on Feb. 28, 1995. Doc. No. 46. This court did not receive a reply in support of such motion from the Sheltons.

Bridgeford, Nordblum and Ramono filed their motion for summary judgment on Feb. 3, 1995. Doc. No. 31. The Sheltons filed their response in opposition on Feb. 27, 1995. Doc. No. 45. This court did not receive any reply thereto.

The Commissioners, Leis and Honnert filed their motion for summary judgment on Feb. 6, 1995. Doc. No. 33. The Sheltons filed their response in opposition to such motion on Feb. 27, 1995. Doc. No. 45. The Commissioners, Leis and Honnert filed their reply in support of their motion on March 3, 1995. Doc. No. 48.

Wallace and Staft filed their motion for summary judgment on Nov. 1, 1994. Doc. No. 23. The Sheltons filed their response in opposition to the Wallace and Staft summary judgment motion on Feb. 6, 1995. Doc. No. 34. Wallace and Staft filed their reply in support of their motion for summary judgment on Feb. 13, 1995. Doc. No. 37.

Smith filed his motion for summary judgment on Jan. 17, 1995. Doc. No. 25. The Sheltons filed their memorandum in opposition on Feb. 10, 1995. Doc. No. 36. Smith filed his reply on Feb. 14, 1995. Doc. No. 40.

Benner filed his motion for summary judgment on Jan. 20, 1995. Doc. No. 27. On Jan. 26, 1995, Benner then filed an addendum to supplement his summary judgment motion. Doc. No. 28. The Sheltons filed their opposition response on Feb. 14, 1995. Doc. No. 38. On Feb. 27, 1995, Benner filed his reply in support of his motion for summary judgment. Doc. No. 44.

After considering these motions, responses and replies, this court requested that the parties submit briefs on as to whether the doctrine of *quasi*-judicial immunity applies to a case, such as this, where defendants are sued in only their official capacities. Doc. No. 49. Smith filed his supplemental memorandum on March 29, 1995. Doc. No. 50. Wallace and Staft responded on March 30, 1995. Doc. No. 51. The Commissioners, Leis, and Honnert also submitted their supplemental memorandum on March 30, 1995. Doc. No. 52. Benner, likewise, filed a supplemental memorandum on March 30, 1995. Doc. No. 53. Finally, also on March 30, 1995, the Sheltons responded with their supplemental memorandum. Doc. No. 54.

## II. INTRODUCTION

The Sheltons assert both federal and State law claims against defendants. *See* Doc. 34 at 8. The Sheltons assert a right of recovery against defendants, in their official capacities, under 42 U.S.C. § 1983 for (a) an unreasonable search and seizure, in violation of the Fourth and Fourteenth Amendments; and (b) an unlawful detainment and unlawful deprivation of property without due process, in violation of the Fifth and Fourteenth Amendments. Doc. No. 34 at 8. The Sheltons also raise State law claims for (a) trespass, (b) assault and battery, (c) false arrest, (d) intentional infliction of emotional distress, and (e) interference with business relations. Doc. 34 at 8. "Significantly, [with regard to the federal claims] plaintiffs do not allege any con-

duct by the defendants beyond what the TRO ordered them to do; rather, plaintiff's complaint essentially alleges that the TRO and the execution of it violated the constitutional rights of the plaintiffs." Doc. 34 at 8; *See also* Doc. 30 at 8; Doc. 38 at 2; Doc. 36 at 8.

### III.  FACTUAL BACKGROUND

During the relevant time in question, the Sheltons were owners of a commercial establishment known as Mann's Lounge, 1152 Steffen Street, Village of Lincoln Heights, Ohio. Doc. 42 at 3. On Oct. 20, 1992, the Hamilton County Prosecutor Joseph Deters filed a petition with the Hamilton County Court of Common Pleas, Ruehlman, J., requesting a permanent injunction, preliminary injunction, and temporary restraining order (TRO) against Mann's Lounge due to alleged continuous drug activity at the premises. Doc. 30 at 2; Doc. 42 at 3. The injunctions and TRO were sought pursuant to Ohio Rev. Code Ch. 3767 (Nuisances), and alleged that Mann's Lounge was a "nuisance," as defined by Ohio Rev.Code 3767.01(C). Doc. 42 at 3. In support of the petitions, the prosecutor attached an affidavit from defendant Wallace. Doc. 30 at 7. That same day, the common pleas court held an *ex parte* hearing on the motion. *See* Doc. 30 at 2. Subsequently, the common pleas court granted the TRO, which, in pertinent part, stated:

> There being no showing that the nuisance has been abated, it is the further order of this court that the premises be closed and padlocked or boarded as deemed necessary by [DART] against its use for any purpose until final decision is rendered on the application for a preliminary and permanent injunction as required by [Ohio Rev.Code §] 3767.04.

> It is further ordered that all personal property located in the premises shall be inventoried and that only necessary personal property located there shall be removed by the occupants prior to closure and under the direction of DART. DART may, however, remove and secure at an off-site location highly mobile and valuable property, such as automobiles, cash, jewelry, and electronic equipment, which may be at risk of theft during the pendency of this order.

> \*    \*    \*    \*    \*    \*

> DART shall serve this Order upon the person of [James L.] Shelton and shall effectuate the closing of said premises with forcible entry, based upon the affidavit of [Wallace], the precondition of non-consensual entry is waived pursuant to [Ohio Rev.Code §] 2933.231 due to the serious risk of physical harm to law enforcement officers or other authorized individuals in the execution of this order.

*See State of Ohio, ex rel. v. Jimmie L. Shelton,* No. A9269294, Hamilton County Common Pleas Court, Temporary Restraining Order, at 3 (Oct. 20, 1992). Doc. No. 30, Exh. C at 3.

Later the morning of Oct. 20, 1995, various members from the SWAT team entered Mann's lounge and secured the premises, as authorized by the TRO. Doc. 42 at 4. DART then served the TRO and closed down Mann's Lounge. Doc. 42 at 4. Subsequently, a trial proceeded in which the common pleas court ultimately found that there was insufficient evidence to permanently close Mann's Lounge under Ohio Rev.Code § 3719.10 and Ch. 3767.

### IV.  DISCUSSION

#### a.) Summary Judgment Standard

Fed.R.Civ.P. 56(c), in pertinent part, provides:

> [Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.

Although summary judgment should be employed cautiously, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91

L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Therefore, summary judgment is appropriate if, "under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* (citing *Brady v. Southern R. Co.*, 320 U.S. 476, 479–480, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943)).

### b.) Qualified and Absolute Immunity

The Supreme Court has recognized the doctrines of qualified and absolute immunity as defenses to 42 U.S.C. § 1983 liability. *Buckley v. Fitzsimmons*, —— U.S. ——, ——, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993), *remanded*, 20 F.3d 789 (7th Cir.1994) (cited in *Evans v. Panioto*, Nos. 94–3602 and 94–3791, 1995 WL 55093, 1995 U.S.App. LEXIS 2719 (6th Cir.1995)).

■ Under the doctrine of qualified immunity, a government official is not subject to liability for the performance of his discretionary functions when his "conduct does not violate clearly established statutory or constitutional rights or which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In most cases, qualified immunity is sufficient to "protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978), *on remand*, *Economou v. Butz*, 466 F.Supp. 1351 (S.D.N.Y.1979), *aff'd without op.*, *Economou v. U.S. Dep't of Agriculture*, 633 F.2d 203 (2d Cir.1980). However, when an individual is sued in his official capacity, and not his individual capacity, the doctrine of qualified immunity does not apply. *See Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Brotherton v. Cleveland*, No. 91–3316, 1992 WL

151286, 1992 U.S.App. LEXIS 15947, at *12–13 (6th Cir.1992) (official in personal-capacity action may assert qualified immunity; however, such defense is unavailable in official-capacity action); *see also*, *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1244 (6th Cir.1989) (qualified immunity available in personal-capacity action).

■ The Court has also recognized that some officials perform "special functions" which, because of their similarity to functions that would have been immune when Congress enacted 42 U.S.C. § 1983, deserve absolute protection from such damages liability. *Buckley*, —— U.S. at ——, 113 S.Ct. at 2613. *Butz*, 438 U.S. at 506, 98 S.Ct. at 2910–11. The official seeking absolute immunity bears the burden of showing that such immunity is justified for the functions at issue. *Burns v. Reed*, 500 U.S. 478, 486–87, 111 S.Ct. 1934, 1939–40, 114 L.Ed.2d 547 (1991), *remanded*, 958 F.2d 374 (7th Cir.1992); *See Antoine v. Byers & Anderson*, 508 U.S. ——, ——, and n. 4, 113 S.Ct. 2167, 2171, and n. 4, 124 L.Ed.2d 391 (1993), *remanded*, 2 F.3d 335 (9th Cir.1993); *Buckley*, —— U.S. at ——, 113 S.Ct. at 2613; *Wagshal v. Foster*, 28 F.3d 1249, 1252 (D.C.Cir.1994).

Because the Sheltons are suing defendants in their official capacities and, not in their individual capacities, defendants do not claim the doctrine of qualified immunity for protection from liability under 42 U.S.C. § 1983.[1] Rather, the defendants assert that they are immune from 42 U.S.C. § 1983 liability pursuant to the doctrine of absolute *quasi*-judicial immunity. *See* Doc. Nos. 37, 40, 44, and 48.

### c.) Absolute Judicial Immunity

■ The doctrine of absolute judicial immunity is as old as medieval times and the English courts. *See Forrester v. White*, 484 U.S. 219, 225, 108 S.Ct. 538, 543, 98 L.Ed.2d 555 (1988)[2]; *Owen v. Independence*, 445 U.S.

---

1. The Sheltons did file a motion to amend their complaint to proceed against defendants in their official, as well as in their individual, capacities. Doc. No. 14. Defendants filed their responses in opposition to such motion to amend. Doc. Nos.

17, 18, 20 and 21. This court denied such motion to amend on Jan. 19, 1995. Doc. No. 26.

2. Stated by the Supreme Court in *Forrester:*
   As a class, judges have long enjoyed a comparatively sweeping form of immunity, though one

622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673 (1980), *reh'g denied,* 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980), *and on remand,* 623 F.2d 550 (8th Cir.1980); *Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher,* 80 U.S. 335, 13 Wall. 335, 347, 20 L.Ed. 646 (1872). Federal, State and local judges have enjoyed the absolute immunity from liability in damages for their judicial or adjudicatory acts. *Forrester,* 484 U.S. at 225, 108 S.Ct. at 543. Only when a judge adjudicates in clear and absolute absence of his judicial jurisdiction does the doctrine of judicial immunity not apply.[3] *See Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994) (judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction); *Ashbrook v. Hoffman,* 617 F.2d 474, 476 (7th Cir.1980) (same); *Napier v. Jonas,* No. 1:94–CV–630, 1995 WL 454774, *2, 1995 U.S.Dist. LEXIS 2701, at *6 (W.D.Mich. Feb. 10, 1995) (well settled that judges are absolutely immune from liability for their judicial acts so long as they have not acted in the clear absence of all jurisdiction); *see also Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (*per curiam* ), *on remand, Waco v. Baltad,* 962 F.2d 865 (9th Cir.1992); *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (immunity from 42 U.S.C. § 1983 suit), *reh'g denied,* 436 U.S. 951, 98 S.Ct. 2862, 56 L.Ed.2d 795 (1978), *and on remand, Sparkman v. McFarlin,* 601 F.2d 261 (7th Cir. 1979); *Foster v. Walsh,* 864 F.2d 416 (6th Cir.1988). A judicial officer does not act in clear absence of all jurisdiction if he merely acts in excess of his authority. *See Doe v. McFaul,* 599 F.Supp. 1421, 1431 (N.D.Ohio 1984) (citing *Sevier v. Turner,* 742 F.2d 262,

271 (6th Cir.1984)). "[T]he commission of grave procedural errors, including those involving due process, does not constitute judicial action taken in the clear absence of all jurisdiction." *Id.*

▌ The rationale of the doctrine of absolute judicial immunity is to be "free from the harassment of private litigation when conducting his official business." *Ashbrook,* 617 F.2d at 476; *See also, Forrester,* 484 U.S. at 225, 108 S.Ct. at 543 (judicial immunity protects "judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants") (citing *Bradley,* 13 Wall (80 U.S.) at 347). "The presence of an appeal is available to remedy judicial errors." *Ashbrook,* 617 F.2d at 476. As stated by the Supreme Court:

> The purposes served by judicial immunity from liability in damages have been variously described. [citation omitted]. In [*Bradley* and *Pierson* ], the Court emphasized that the nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have.... If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. [citation omitted]. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably

> 484 U.S. at 225, 108 S.Ct. at 543 [citations and internal quotations omitted].

---

not perfectly well-defined. Judicial immunity apparently originated, in medieval times, as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error. [citation omitted]. More recently, this Court found that judicial immunity was the settled doctrine of the English courts for many centuries, and has never been denied, that we are aware of, in the courts of this country....

**3.** Within the judicial immunity context, however, one must readily distinguish from a judge's adjudicatory functions, where the stronghold of absolute judicial immunity lies, and the other administrative, legislative or executive functions that a judge may occasionally be assigned, where absolute immunity does not apply. *See Foster v. Walsh,* 864 F.2d at 417–18.

associated with exposing judges to personal liability.

*Forrester,* 484 U.S. at 226–27, 108 S.Ct. at 543–44. Therefore, a judge should not be subject to harassing vexatious suit for making judicial decisions, especially the difficult, wide-ranging and controversial ones.

### d.) Quasi–Judicial Immunity

■ *Quasi* -judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered to be figurative arms of the very commanding judge who is immune. *Bush,* 38 F.3d at 847; *Joseph v. Patterson,* 795 F.2d 549, 560 (6th Cir.1986), *cert. denied,* 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987); *Johnson v. Granholm,* 662 F.2d 449, 450 (6th Cir.1981), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982); *Turney v. O'Toole,* 898 F.2d 1470, 1472 (10th Cir.1990); *See also, Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecuting attorney has absolute *quasi* -judicial immunity for those activities intimately associated with the judicial phase of the criminal process); *Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1 (1st Cir.1976) (receivers absolutely immune even though engaged in ministerial acts). Just as a judge acting in his judicial capacity is absolutely immune from liability under 42 U.S.C. § 1983, an official charged with the duty of executing a facially-valid court order also enjoys absolute immunity from liability from damages in a suit challenging conduct prescribed by that order. *Pierson,* 386 U.S. at 553–54, 87 S.Ct. at 1217–18; *Turney,* 898 F.2d at 1472. As discussed, *supra,* an erroneous order can be facially-valid, as long as it was not made outside a court's jurisdiction. *See Turney,* 898 F.2d at 1472.

■ In determining whether the specific actions of a government official are so integral to the judicial process to sound within the tradition of *quasi* -judicial immunity, the Supreme Court has articulated a "functional approach." *Forrester,* 484 U.S. at 229, 108 S.Ct. at 545. This functional approach looks to "the nature of the function performed, not the identity of the actor who performed it."

*Id.* Further, the functional approach "focuses on the conduct for which the immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." *Buckley,* —— U.S. at ——, 113 S.Ct. at 2615. Set forth by the Sixth Circuit:

> Whether particular officeholders have *qua-si* -judicial absolute immunity for their acts depends on an analysis of the nature of the activities in which the officeholder engages and the relationship of those activities to the judicial process.

*Ashbrook,* 617 F.2d at 476; *See Foster,* 864 F.2d at 417 (similar); *See also, Sparks v. Character and Fitness Committee,* 859 F.2d 428 (6th Cir.1988) (appropriate inquiry is whether the function in question is a truly judicial act or an act that simply happens to have been done by judges), *cert. denied,* 489 U.S. 1011, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989).

The doctrine of *quasi* -judicial immunity has been held to protect administrative, law enforcement, court and prison officials from 42 U.S.C. ·§ 1983 liability. *See infra.* In *Scarso v. Cuyahoga County Dep't of Human Services,* the court held that defendants Cuyahoga County Department of Human Services (CCDHS), employees of CCDHS and Cuyahoga County juvenile court employees were entitled to *quasi* -judicial immunity protection for carrying out a court order depriving plaintiff of physical possession of his child. 747 F.Supp. 381, 386–88 (N.D.Ohio 1989), *aff'd in part and remanded in part,* 1990 WL 169645, 1990 U.S.App. LEXIS 19,-728 (6th Cir.1990). As stated by the *Scarso* court:

> The [42 U.S.C.] § 1983 liability of CCDHS, CCDHS employees, and the [j]uvenile [c]ourt employees is premised upon their efforts at enforcing Judge Ruben's order. Clearly, those defendants are entitled to the protection afforded Judge Ruben under the doctrine of absolute judicial immunity.

*Id.* at 387.

In *Doe v. McFaul,* the court held that the doctrine of *quasi* -judicial immunity protect-

ed Cuyahoga County, its commissioners, the sheriff and corrections officers from 42 U.S.C. § 1983 liability for carrying a Cuyahoga County judge's order to place juvenile plaintiffs in adult lock-up facilities, as part of the judge's "Scared Straight" program. 599 F.Supp. at 1431. Wrote the court:

It follows logically that [under the doctrine of qualified judicial immunity] the remaining defendants—the County, the Commissioners, and Judge Spellacy—cannot be subject to liability for their failure to overrule, countermand, challenge, or otherwise interfere with Judge Harris' facially valid order. Plaintiffs point to no case law supporting the proposition that a [S]tate official violates the Constitution or civil rights statutes by failing to attack a [S]tate court judgment.

*Id.* at 1432.

In *Foster,* the Sixth Circuit held that, although the clerk's issuance of a warrant for plaintiff's arrest was in error, the clerk was still immune from liability because the clerk's issuance was a "truly judicial act" in that the judge directed the act. 864 F.2d at 417–18. Likewise, in *Bush,* the Sixth Circuit found that the defendant was acting in a judicial capacity in carrying out a judicial detention order, and, thus, was immune from liability under 42 U.S.C. § 1983. 38 F.3d at 848.

Finally, in *Wholesale Electric & Supply, Inc. v. Robusky,* 22 Ohio St.2d 181, 258 N.E.2d 432 (1970), where a writ of possession was valid on its face, defendants—the sheriff, his deputy and a moving company and its president acting under the sheriff in removing personal property from a structure— were deemed immune from liability, pursuant to the doctrine of *quasi*-judicial immunity.

The policies undergirding these *quasi*-judicial immunity case holdings are the very policies which underlie the grant of absolute judicial immunity to judges. *See Ashbrook,* 617 F.2d at 476. "On one hand is the policy that an official making *quasi*-judicial discretionary judgements should be free of the harassment of private litigation in making those judgments. [citation omitted].... On the other hand a nonjudicial officer who is delegated judicial duties in aid of the court should not be a lightning rod for harassing

litigation aimed at the court." *Id.; See Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985), *on remand, Graham v. Wilson,* 791 F.2d 932 (6th Cir.1986). Moreover, with specific respect to law enforcement officials, courts have recognized that such officials should not have to engage in second-guessing and defying a court's order. As set forth by one court:

State officials must not be required to act as pseudo-appellate courts scrutinizing the orders of judges, [citation omitted], but subjecting them to liability for executing an order because the order did not measure up to statutory standards would have just that effect. To allow plaintiffs to bring suit any time a [S]tate agent executes a judicial order which does not fulfill every legal requirement would make the agent a lightning rod for harassing litigation aimed at judicial orders. [citation omitted]

\*    \*    \*    \*    \*    \*

The fearless and unhesitating execution of court orders is essential if the court's authority and ability to function are to remain uncompromised, but State officers subject to litigation might neglect the execution of those orders. [citation omitted]. Also, a fear of bringing down litigation on the officer executing the order might color a court's judgment in some cases. [citations and brackets omitted]. If the court ignored the danger of such suits, tension between trial judges and those officials responsible for enforcing their orders inevitably would result. [citation omitted]. The public interest demands strict adherence to judicial decrees, [citation omitted] especially with respect to emergency detention orders, for immediate treatment often is necessary and the class of officials qualified to carry out the order is limited.

*O'Toole,* 898 F.2d at 1473 [internal quotations omitted throughout]; *see also, Bush,* 38 F.3d at 848; *Doe v. McFaul,* 599 F.Supp. at 1431 (similar policies enunciated); *Robusky,* 22 Ohio St.2d 181 at 183–184, 258 N.E.2d 432 (similar policies articulated).

### e.) Case At Hand

Based on the foregoing, this case is appropriate for summary judgment, based upon the doctrine of *quasi*-judicial immunity. Explicitly stated by the Sheltons, "Significantly, plaintiffs do not allege any conduct by defendants beyond what the [TRO] ordered them to do; rather plaintiff's complaint essentially alleges that the TRO and execution of it violated the constitutional rights of plaintiffs." Doc. 34 at 8; *see also*, Doc. 30 at 8–9; Doc. 38 at 2; Doc. 36 at 3. As such, the Sheltons' 42 U.S.C. § 1983 claim attacks only defendants' actions that were undertaken to carry out the provisions of the TRO.

This court first finds that Ruehlman, J.'s issuance of the TRO was clearly within his jurisdictional province. As set forth at Ohio Rev.Code § 3767.04(A), a nuisance abatement injunction or TRO action:

> ... shall be commenced in the court of common pleas of the county which the nuisance is located. At the commencement of the action, a complaint alleging the facts constituting the nuisance shall be filed in the office of the clerk of court of common pleas.

The nuisance abatement action, directed at Mann's Lounge, located in Hamilton County, Ohio, was jurisdictionally properly placed before Ruehlman, J. Even assuming that Ruehlman, J.'s *ex parte* granting of the TRO was clearly erroneous and involved due process issues, Ruehlman, J.'s jurisdictional authority unquestionably included the issuance of the TRO. *See Doe v. McFaul*, 599 F.Supp. at 1431.

This court further finds that defendants have satisfied their burden of showing they should be afforded protection under the robes of the doctrine of *quasi*-judicial immunity. Unquestionably, defendants' carrying out the TRO was so intimately connected and intertwined with Ruehlman, J.'s issuance of such order as to consider them to be figurative arms of the very judge who sent forth the order. *See Bush*, 38 F.3d at 847. This case is, therefore, analogous to *Doe v.*

*McFaul, Scarso,* and *Robusky, supra.* Just as the *Scarso* county defendants who carried out the judge's child custody order were *quasi*-judicially immune; just as the *Doe v. McFaul* county defendants who carried out the judge's order to place juveniles in adult lock-ups were so immune; and just as the *Robusky* defendants who carried out the judge's order to remove plaintiff's personal property were immune, so, too, are defendants. What the defendants did—and of which the Sheltons complain—was to carry out the TRO.

Finally, this court finds that the doctrine of *quasi*-judicial immunity applies to the defendants at hand, even though they are sued only in their official capacities. As the Supreme Court has stated, the doctrines of judicial and *quasi*-judicial immunity are to be applied *via* a functional approach, looking to the nature of the function performed, not the identity of the actor who performed it. *Forrester*, 484 U.S. at 229, 108 S.Ct. at 545. Despite the fact that the defendants are being sued in their official capacities, the nature of their function at issue was their carrying out and abiding by a judge's TRO order. Thus, the officials carrying out the TRO, whether it be in their official or individual capacities, should be *quasi*-judicially immune.[4]

In sum, for this court to decide that the defendants should not be *quasi*-judicially immune would be to render a disposition that would prospectively promote defendants and defendants' respective jurisdictions to second-guess, overrule and defy facially-valid court orders to avoid 42 U.S.C. § 1983 liability. *See O'Toole*, 898 F.2d at 1473; *see also, Bush*, 38 F.3d at 848; *Doe v. McFaul*, 599 F.Supp. at 1431. This court is not about to do that. The defendants' motions for summary judgment, as to the Sheltons' 42 U.S.C. § 1983 claim, are granted.

### f.) Supplemental Jurisdiction

The 28 U.S.C. § 1367(c)(3), in pertinent part, provides:

---

4. Additionally, the courts of the Sixth Circuit have already effectively recognized utilization of the doctrine of *quasi*-judicial immunity to protect those entities sued only in their official capacities. *See Scarso*, 747 F.Supp. at 386–88 (holding that the county was *quasi*-judicially immune from 42 U.S.C. § 1983 liability); *Doe v. McFaul*, 599 F.Supp. at 1431 (same).

The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction.

As the Sixth Circuit has stated, "[W]here a district court exercises jurisdiction over State law claims solely by virtue of pendent [sic] jurisdiction and the federal claims are dismissed prior to trial, the State law claims should ordinarily be dismissed without reaching their merits." *Wolotsky v. Huhn,* 960 F.2d 1331, 1338 (6th Cir.1992); *See also, Faughender v. North Olmsted,* 927 F.2d 909 (6th Cir.1991).

Having granted defendants' motion for summary judgment as to the Sheltons' 42 U.S.C. § 1983 claim against defendants, this court dismisses the supplemental State claims without reaching their merits.

## V. CONCLUSION

This court finds that defendants are immune from 42 U.S.C. § 1983 liability, based on the theory of *quasi*-judicial immunity. This court grants the motions for summary judgment filed by defendants Wallace' and Staft (Doc. No. 23); Smith (Doc. No. 25); Benner (Doc. No. 27); Bridgeford, Nordblum and Ramono (Doc. No. 31); and the Commissioners, Leis and Honnert (Doc. No. 33). Plaintiff's motion for partial summary judgment (Doc. No. 30) is denied as moot. This court dismisses the averred State claims without reaching their merits.

IT IS SO ORDERED.