Charles ASHBROOK and Master Chef,
Inc., Plaintiffs-Appellants,

v.

Harlan HOFFMAN et al.,
Defendants-Appellees.

No. 79–2000.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 21, 1980.

Decided March 19, 1980.

Rehearing and Rehearing In Banc
Denied May 19, 1980.

Jon R. Pactor, Indianapolis, Ind., for plaintiffs-appellants.

W. C. Blanton, Indianapolis, Ind., for defendants-appellees.

Before SPRECHER, TONE and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The central issue on appeal is whether Indiana partition commissioners are entitled to absolute quasi-judicial immunity for their conduct in handling a partition sale and in distributing the proceeds from such a sale. The district court concluded that the defendants-appellees, Harlan Hoffman and James Hooper, the partition commissioners, were entitled to absolute immunity for the alleged acts of wrongdoing and granted the motion to dismiss them from the suit remaining in federal court.[1] Plaintiffs, Charles Ashbrook and Master Chef, Inc., appealed. We affirm.

For the purposes of reviewing the grant of a motion to dismiss the well-pleaded factual allegations of the complaint are taken as true and the grant is upheld if it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Central Ice Cream Co. v. Golden Rod Ice Cream Co., 257 F.2d 417 (7th Cir. 1958). The relevant well-pleaded factual allegations in this complaint reveal the following:

Charles and Florence Ashbrook were divorced in 1975. As part of the divorce decree the court awarded each party an undivided one-half interest in a restaurant and motel business known as Master Chef. Soon thereafter Florence sued Charles for partition of Master Chef and for damages.

The court appointed two partition commissioners for the sale, Charles' attorney, James Hooper, and Florence's attorney, Harlan Hoffman. This appointment, plaintiffs contend, was in violation of Indiana law. The commissioners were responsible for conducting the sale of Master Chef. Plaintiffs claim the commissioners advertised the sale in a manner unlikely to attract many bidders. In addition Hoffman, as part of a conspiracy with Florence and others, and while serving as a commissioner, aided Florence in bidding in violation of Indiana law. Hoffman's participation caused Charles to pay $70,000 more than he would have had to pay if Hoffman had not participated. After the sale Hooper refused to attack the sale when his client Charles requested that he do so. Later, after Charles succeeded in purchasing the property, Hooper and Hoffman reported to the supervising court that they had distributed to Charles his share of the proceeds. Plaintiffs claim this was not true. At this point the court discharged the commissioners. Thereafter, without notifying Charles, Hooper and Hoffman deposited Charles' share of the proceeds with the clerk of court. Later still, Hooper after withdrawing as Charles' counsel filed an attorney's lien for services rendered representing Charles. The court initially did not grant the lien, but later the court, with a different judge presiding, granted the lien without notice to Charles or the opportunity for a hearing.

Plaintiffs contend that the improper appointment, the defective advertisement, the illegal participation in the bidding, the unlawful cover-up of the sale, and the untruthful reporting to the court about the distribution of the proceeds constituted action in violation of Section 1 of the Sherman Act and also was action under color of law which deprived plaintiffs of their constitutional rights in violation of Section 1983 of Title 42 of the United States Code. Defendant commissioners contend that they

---

1. As originally brought the suit involved several defendants and contained claims for relief under state law. The district court exercised its discretion to dismiss the pendent state law claims. Plaintiffs' suit against other defendants is continuing in federal court.

are absolutely immune from this federal suit for damages because the acts complained of constituted either the discretionary performance of duties intimately related to the judicial process or were merely the execution of directives of the supervising court.

■ The absolute immunity of judges from civil liability for acts not in clear absence of judicial jurisdiction is firmly established. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (immunity from Section 1983 suit); *Bradley v. Fisher,* 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872) (common law immunity from civil suits); *Turner v. American Bar Association,* 407 F.Supp. 451 (N.D.Tex., W.D.Pa., N.D.Ind., D.Minn., S.D.Ala., W.D.Wis.1975), *aff'd sub nom. Taylor v. Montgomery,* 539 F.2d 715 (7th Cir. 1976) and *Pilla v. American Bar Association,* 542 F.2d 56 (8th Cir. 1976) (immunity from civil antitrust suit). The rationale of the immunity is that a judge should be free from the harassment of private litigation when conducting his official business. The presence of an appeal is available to remedy judicial errors.

■ Other nonjudicial officials whose official duties have an integral relationship with the judicial process have also been held to have absolute immunity for their quasi-judicial conduct. *See, e. g., Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecuting attorney has absolute quasi-judicial immunity for those activities intimately associated with the judicial phase of the criminal process); *Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1 (1st Cir. 1976) (receivers absolutely immune even though engaged in ministerial acts); *Lockhart v. Hoenstine,* 411 F.2d 455 (3d Cir.), *cert. denied,* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969) (prothonotaries absolutely immune); *Stift v. Lynch,* 267 F.2d 237 (7th Cir. 1959) (justices of the peace enjoy quasi-judicial absolute immunity). The same policies which underlie the grant of absolute judicial immunity to judges justify the grant of immunity to those conducting activities intimately related to the judicial process. *See Imbler v. Pachtman,* 424 U.S. at 423–24, 96 S.Ct. at 991–992, Note, 68 Harv.L.Rev. 1229 (1955). On one hand is the policy that an official making quasi-judicial discretionary judgments should be free of the harassment of private litigation in making those judgments. *Imbler,* 424 U.S. at 423, 96 S.Ct. at 991. On the other hand a nonjudicial officer who is delegated judicial duties in aid of the court should not be a "lightning rod for harassing litigation" aimed at the court. *Kermit Construction,* 547 F.2d at 3. Thus, if "acts, alleged to [be] wrongful, were committed by the officer in the performance of an integral part of the judicial process," *Robichaud v. Ronan,* 351 F.2d 533, 536 (9th Cir. 1965), then the officer is absolutely immune from suit.

■ Whether particular officeholders have quasi-judicial absolute immunity for their acts depends on an analysis of the nature of the activities in which the officeholder engages and the relationship of those activities to the judicial process. *Daniels v. Kieser,* 586 F.2d 64, 69 (7th Cir. 1978), *cert. denied,* 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 659 (1979). An analysis of a partition commissioner's official duties leads us to the conclusion that they are sufficiently related to the judicial process to entitle them to quasi-judicial absolute immunity for their official acts. A partition proceeding is in the nature of a judicial proceeding; it begins with a complaint and results in a judicial decree of partition. Ind.Code Ann. § 32–4–5–3 (Burns 1973). Commissioners are appointed by a court, their duties are defined by statute, and the court reviews their conduct. *Id.* § 32–4–5–6. The commissioners make a judgment whether the lands for which partition is sought may be divided without damage to the owners. *Id.* § 32–4–5–13. The commissioners prepare a report of partition which is read in open court, and if confirmed by the court is entered in the record book. *Id.* §§ 32–4–5–10, 32–4–5–11. The partition commissioners, under the supervision of the court, exercise discretion in the conduct of quasi-judicial proceedings. The commissioners serve as instruments or arms of the court

leading to the issuance of a judicial decree of partition. *Bryan v. Yoder,* 225 Ind. 57, 71 N.E.2d 474 (1947). In total these factors suggest an integral relationship with the judicial process entitling partition commissioners to absolute quasi-judicial immunity for acts in furtherance of their official duties. The policies behind the extension of quasi-judicial absolute immunity suggest that the commissioners are absolutely immune. The presence of appeal to correct the commissioners' errors further suggest that quasi-judicial immunity exists. *Atcherson v. Siebenmann,* 458 F.Supp. 526, 535 (S.D.Iowa 1978), *vacated in part,* 605 F.2d 1058 (8th Cir. 1979). The same result has been reached in analogous situations. *Tamari v. Conrad,* 552 F.2d 778 (7th Cir. 1977) (arbitrators); *Steward v. Minnick,* 409 F.2d 826 (9th Cir. 1969) (court reporters and clerks of court); *Sarelas v. Sheehan,* 353 F.2d 5 (7th Cir. 1965) (deposition officers).

The alleged acts of wrongdoing in this case are acts in furtherance of the commissioners' official duties in aid of the court. Advertisement of a partition sale is a routine part of the conduct of such a sale. Any inadequacy in the advertisement is reviewable on appeal but will not subject the commissioners to a federal civil damages suit. Likewise, complaints concerning the disposal of the proceeds of sale where it is not alleged that the proceeds were misappropriated,[2] improper participation in the bidding process, and an alleged unlawful cover-up of wrongdoing in the sale, all relate to the conduct of the quasi-judicial partition proceeding and are activities for which the commissioners are absolutely immune.[3] Therefore, the district court properly dismissed Hoffman and Hooper from the suit.[4]

■ As a second issue the plaintiffs claim that the law partnership, Hooper & Votaw, and Hooper's partner Votaw were improperly dismissed from the federal suit. The complaint conditions Hooper & Votaw's and Votaw's liability in the suit on the partnership relationship with Hooper. The only factual allegation in the complaint concerning Hooper & Votaw and Votaw, however,

2. At oral argument the suggestion was made that because partition commissioners must post a bond before assuming office some state liability was intended. Our independent examination of this issue suggests the bond was not intended to guard against misfeasance in the conduct of the partition proceedings. The conditions of the bond only require that the commissioners "will make due and proper accounting of all funds and monies coming into their hands. . . . " Recovery on the bond, as the bond suggests, has been limited to situations in which the commissioner has been unable to account for proceeds which have come into his possession. *Coggeshall v. State ex rel. Corder,* 112 Ind. 561, 14 N.E. 555 (1887) (suit on bond available when commissioner holds distributive share of proceeds and has failed to pay it to party entitled to the share); *Williams v. State ex rel. Johnson,* 87 Ind. 527 (1882) (commissioner's failure to account for proceeds which he possesses and which he has allegedly converted to his own use states cause of action on bond). Since plaintiffs concede in their complaint that the commissioners have deposited Charles' share of the proceeds with the court, there is no liability on the bond. Therefore, we need not consider whether the availability of a state law damage suit on a bond for alleged acts of wrongdoing would affect the conclusion that the partition commissioners are immune from federal suit.

3. Allegations concerning the appointment of the commissioners in violation of Ind.Code Ann. § 32–4–5–6 (Burns 1973) is an attack on the judicial order of appointment. *Stump v. Sparkman,* 435 U.S 349, 98 S.Ct. 1099, 55 L.Ed.2d 331, makes it clear that judicial immunity covers such an act. Likewise, the court's granting of the attorney's lien without notice to Charles or a hearing is an act by a judge entitled to absolute judicial immunity from a civil damages suit.

4. Plaintiffs contend that the conduct of the partition proceeding is a ministerial act analogous to a sheriff's sale and thus partition commissioners are not entitled to quasi-judicial absolute immunity. We have found that the role of the partition commissioner is integrally related to and is in furtherance of the judicial process. This entitles such a commissioner to quasi-judicial immunity. Plaintiffs' characterization of a partition proceeding as ministerial does not affect the conclusion that the commissioners are entitled to absolute immunity because those performing ministerial acts under a judge's supervision and intimately related to judicial proceedings have quasi-judicial immunity. *Kermit Construction.* 547 F.2d 1, (1st Cir. 1976); *Waits v. McGowan,* 516 F.2d 203 (3d Cir. 1975).

is that the court awarded the partnership $2,000 from sums owed Hooper for his legal representation of Charles Ashbrook. There are no allegations that Votaw or the partnership participated in any of the alleged acts of wrongdoing or were part of any conspiracy. Absent such factual allegations no federal claim has been stated against Votaw or the partnership under Section 1983 (*Sparkman v. McFarlin,* 601 F.2d 261 (7th Cir. 1979) (in banc)), or under the Sherman Act (15 U.S.C. § 1).

Accordingly, we affirm the district court's order.

AFFIRMED.