**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MEDICAL DEVELOPMENT
INTERNATIONAL, a Delaware
corporation,
　　　　*Plaintiff-Appellant,*

　　　　v.

CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION;
ROBERT SILLEN, individually and as
Receiver; J. CLARK KELSO,
Receiver,
　　　　*Defendants-Appellees.*

No. 08-15759

D.C. No.
2:07-CV-02199-
WBS-EFB

MARCIANO PLATA,
　　　　*Plaintiff,*

　　　　and

MEDICAL DEVELOPMENT
INTERNATIONAL, a Delaware
corporation,
　　　　*Petitioner-Appellant,*

　　　　v.

ARNOLD SCHWARZENEGGER,
Governor,
　　　　*Defendant,*

　　　　and

CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION;
J. CLARK KELSO, Receiver,
　　　　*Defendants-Appellees.*

No. 08-16858

D.C. No.
3:01-CV-01351-
TEH

OPINION

14719

Appeal from the United States District Court
for the Eastern District of California
William B. Shubb, District Judge, Presiding

Appeal from the United States District Court
for the Northern District of California
Thelton E. Henderson, District Judge, Presiding

Argued and Submitted
July 16, 2009—San Francisco, California

Filed October 30, 2009

Before: Barry G. Silverman, Richard R. Clifton, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Clifton

---

## COUNSEL

Bennett J. Lee (argued) and Garrett E. Dillon, Watt, Tieder, Hoffar & Fitzgerald, LLP, San Francisco, California, for the appellant.

Michelle M. Mitchell (argued), Deputy Attorney General, Sacramento, California, for appellee California Department of Corrections and Rehabilitation; Martin H. Dodd (argued), Futterman & Dupree LLP, San Francisco, California, for the appellee J. Clark Kelso, as Receiver; John W. Fowler, Bergeson, LLP, San Jose, California, for appellee Robert Sillen.

---

## OPINION

CLIFTON, Circuit Judge:

A receiver appointed by a federal district court currently oversees the delivery of medical care to prisoners incarcerated by the California Department of Corrections and Rehabilitation (CDCR). Medical Development International (MDI) provided medical services for two of CDCR's prisons, without a finalized contract. The Receiver[1] terminated MDI's services.

---

[1]CDCR has had two receivers: Robert Sillen and J. Clark Kelso. We refer to both collectively as "the Receiver," except where their respective identities are pertinent to the discussion.

MDI was not paid for much of its work and filed suit against the Receiver and CDCR. MDI's claim has been before two different federal district courts, but MDI did not obtain relief from either of them. Appeals have been taken by MDI from both and have been consolidated before us.

The primary question presented to us is whether the Receiver is immune from suit for MDI's claim. We conclude that in the circumstances presented here the Receiver may be sued in his official capacity and he is not covered by judicial immunity. We also conclude that the federal district court had subject matter jurisdiction over MDI's lawsuit after it was removed from state court, and that MDI was not required to obtain permission from the court that appointed the Receiver prior to filing suit against him, under 28 U.S.C. § 959(a). As a result, we affirm in part and vacate in part the orders that are the subject of this appeal, and we remand for further proceedings.

## I.   Background

In June 2005, the U.S. District Court for the Northern District of California established a receivership to take control of the delivery of medical services to all California state prisoners confined by CDCR. *Plata v. Schwarzenegger*, No. C01-1351 TEH, 2005 WL 2932253, at *1 (N.D. Cal. Oct. 3, 2005). The court explained that "[i]t is clear . . . that [an] unconscionable degree of suffering and death is sure to continue if the system is not dramatically overhauled," *id.*, and determined that the only solution to the systemic failures that had led to these problems was "the drastic but necessary remedy of a Receivership." *Id.* at *1; *see also id.* at *23-33.

The court charged the Receiver with "provid[ing] leadership and executive management" to CDCR, "with the goals of restructuring day-to-day operations and developing, implementing, and validating a new, sustainable system." In particular, it assigned the Receiver the "duty to control, oversee,

supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR," and equipped the Receiver with all powers vested by law in the Secretary of the CDCR as they relate to the above functions.

Shortly thereafter, the Northern District entered another order relating specifically to contracts for medical services entered into by CDCR. It did so because the court perceived what it described as "yet another chilling example of the inability of the CDCR to competently perform the basic functions necessary to deliver constitutionally adequate medical health care." CDCR contracts with third parties for most of the medical care it provides to inmates, but, the court explained, in doing so CDCR had failed to competitively bid the contracts, had used flawed negotiating practices, had agreed to excessive rates of compensation, and had failed to secure necessary approvals. To make matters worse, the court concluded that CDCR's response to the failures was simply to stick its "head[ ] in the sand," causing "*the . . . process for negotiating, processing, renewing, and payment of medical contracts [to] collapse[ ].*"

To address this problem, the Northern District ordered CDCR to develop new processes for entering into and managing medical contracts. It also ordered CDCR to "pay all current outstanding, valid, and CDCR-approved medical invoices . . . within 60 days" and authorized CDCR to enter into contracts without competitive bidding while it developed the new processes.

In that context, CDCR entered into a relationship with MDI. MDI is an administrator of prison health care systems, headquartered in Florida, providing "services designed to facilitate the timely and cost-effective delivery of health care to incarcerated persons." CDCR sought MDI's services as part of a pilot program in two facilities, the California State Penitentiary, Los Angeles, and the California Correctional

Institution in Tehachapi. Specifically, it was proposed that MDI would (1) enter into agreements with physicians and hospitals, (2) assist prison staff in locating medical specialists, (3) implement a centralized system for scheduling and tracking inpatient and outpatient care, and (4) create a centralized billing system for payment claims by health-care providers.

After months of negotiation the parties still had not finalized a contract. Nonetheless, CDCR permitted MDI to begin working in the two institutions, purportedly in reliance on the Northern District's orders described above.

Sometime after that, CDCR staff began to worry that because MDI was not licensed to practice medicine in California, MDI might be violating California's prohibition on the corporate practice of medicine. As a result of that concern, in January 2007 the Receiver ordered CDCR to stop all payments on MDI's invoices. At a meeting with MDI representatives, the Receiver indicated that MDI would be paid only if it was determined that MDI was lawfully providing services in California. In the meantime, MDI was instructed to continue working in the two institutions. Despite efforts by MDI to show that its services were lawful, the Receiver ended the relationship on April 7, 2007, and expelled MDI from the two institutions.

MDI filed suit in Sacramento County Superior Court against the Receiver and CDCR. Pursuant to 28 U.S.C. § 1442, the Receiver removed MDI's lawsuit to the U.S. District Court for the Eastern District of California.

The Receiver and CDCR then moved the court to dismiss the complaint for lack of subject matter jurisdiction. The Eastern District granted the motion and dismissed the action. The court, citing *Barton v. Barbour*, 104 U.S. 126, 127 (1881), explained that "[t]he United States Supreme Court has held that federal common law bars suits against receivers in courts other than the court charged with the administration of the

estate" unless the suit is approved by the appointing court. Based on reasoning that will be described in greater detail below, the court rejected MDI's argument that the bar did not apply to this action because it fit within a statutory exception codified at 28 U.S.C. § 959(a). Because approval of the lawsuit by the court that appointed the Receiver, the Northern District, had not been obtained, the action against the Receiver was dismissed.

The motion to dismiss as to CDCR was granted as well. The Eastern District noted that "[t]he bulk of [MDI]'s allegations against the CDCR arise from the CDCR's compliance with [the Receiver]'s orders." Because of this, the court concluded that "due to the significant overlap in [MDI]'s allegations, the interests of judicial economy also support the accompanying dismissal of [MDI]'s causes of action with respect to the CDCR." Accordingly, the court dismissed the action as to both the Receiver and CDCR.

MDI appealed to this court, but the appeal was stayed by a stipulation of the parties to allow MDI to seek leave from the Northern District to sue the Receiver. MDI sought such leave, but the Northern District denied the request. It held that MDI failed to set forth a prima facie case because "the Receiver would be immune from MDI's suit." It explained that "a receiver is absolutely immune from suit for functions 'intimately connected with his receivership duties.' " (quoting *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1304 (9th Cir. 1989)). Since the court had charged the Receiver with the "duty to control, oversee, supervise, and direct all . . . contractual . . . functions," and MDI was suing the Receiver for "terminating whatever quasi-contractual relationship may have existed when he suspected illegality," MDI was challenging the Receiver's conduct in performing the very duties the court had set up the receivership to perform.

MDI then filed a motion for clarification. The motion explained that MDI intended to file a state court lawsuit

against CDCR alone and sought guidance as to whether the court also intended its earlier order to rule on CDCR's immunity. The Northern District declined to provide such guidance. It stated that MDI had not sought leave to sue CDCR in state court, only the Receiver, "and there is no requirement that such leave [to sue CDCR] be obtained." Because there was no pending case between MDI and CDCR, "MDI essentially [sought] an order deciding whether an immunity defense, if raised . . ., would succeed," a decision the court held would be an unconstitutional advisory opinion. MDI appealed the Northern District's order.

In addition, MDI also filed a complaint against CDCR, and 20 Does, in Sacramento County Superior Court, not naming the Receiver as a defendant. The complaint stated seven causes of action: (1) breach of contract, (2) wrongful termination of contract, (3) promissory estoppel, (4) quantum meruit/unjust enrichment, (5) assumpsit, (6) account stated, and (7) violations of California's Prompt Payment Act. The state court stayed the proceedings pending this appeal.

The appeals by MDI from the Eastern District and the Northern District decisions described above were consolidated.

## II. Discussion

On appeal MDI raises three main issues: (1) whether the Eastern District erred in exercising removal jurisdiction; (2) whether MDI's lawsuit fits within the statutory exception to the bar on suing a receiver without permission from the appointing court; and (3) whether the Receiver is absolutely immune from MDI's claim. Each issue is addressed in turn.

### A. *Removal*

MDI asserts that the Receiver's removal of MDI's state court complaint was invalid. We disagree.

**[1]** It appears that MDI is raising this issue for the first time on appeal. After the notice of removal was served, MDI did not move in the Eastern District to remand the action to state court. As a result, the only grievance it can raise is lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal . . . .").

**[2]** The relevant statute authorizing the removal, 28 U.S.C. § 1442(a), reads:

> A civil action . . . in a State court against any of the following may be removed by them to the district court of the United States . . . : (1) . . . any officer (or any person acting under that officer) of the United States . . . sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress[;] . . . (3) Any officer of the courts of the United States, for any act under color of office or in the performance of his duties . . . .

It is obvious that the requirement for removal under the statute is met. "[A] receiver is an officer of the courts of the United States . . . ." *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1312 (9th Cir. 1981). "The requirement of 'any act under color of such office' has been construed as requiring a causal connection between the charged conduct and the official authority." *Id.* at 1313. That connection is established where the challenged conduct involves actions "entrusted" to the receiver "in his capacity as receiver." *Gay v. Ruff*, 292 U.S. 25, 33, 39 (1934). Because MDI has conceded that it is suing the Receiver over the performance of his court-appointed duties, the nexus is present. *See Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (explaining that "the right of removal" created by § 1442(a) "is absolute for conduct performed under color of federal

office, and . . . the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)" (internal quotation marks omitted)). Thus, we affirm the Eastern District's exercise of jurisdiction.

### B.    The Barton *Rule and 28 U.S.C. § 959(a)*

MDI also argues that the Eastern District erred in dismissing its suit. MDI asserts that it was not required to obtain permission from the Northern District to sue the Receiver because its action fits within the statutory exception to the general rule requiring an appointing court's permission before suing a receiver in another jurisdiction. We agree.

We review jurisdictional questions de novo. *See McGuire v. United States*, 550 F.3d 903, 908 (9th Cir. 2008).

**[3]** The requirement that a party obtain leave from the appointing court before suing a receiver in another venue "is long-standing." *See Curry v. Castillo* (*In re Castillo*), 297 F.3d 940, 945 (9th Cir. 2002). The rule was first announced 128 years ago in *Barton v. Barbour*. The Supreme Court held that when a plaintiff sues a receiver outside of and without the permission of the appointing court, the non-appointing court is without jurisdiction to entertain the suit. *Barton*, 104 U.S. at 131. As the Court succinctly explained in a later decision: "When a court exercising jurisdiction in equity appoints a receiver of all the property of a corporation, the court assumes the administration of the estate. The possession of the receiver is the possession of the court . . . ." *Porter v. Sabin*, 149 U.S. 473, 479 (1893). "It is for that court," therefore, "to decide whether it will determine for itself all claims of or against the receiver, or will allow them to be litigated elsewhere." *Id.*; *see also Barton*, 104 U.S. at 136.

**[4]** There is a statutory exception to the *Barton* rule. The exception was enacted by Congress to address a concern expressed in a dissent to *Barton* filed by Justice Miller. *See*

*Diners Club, Inc. v. Bumb*, 421 F.2d 396, 398-99 (9th Cir. 1970) (explaining that because the original § 959 was enacted shortly after *Barton*, and given the content of Justice Miller's dissent, it is clear that the purpose of § 959 was to enact the dissent into law). Justice Miller wrote that he agreed with the majority to the extent that its rule was limited to receivers "appointed to wind up a defunct corporation." *Barton*, 104 U.S. at 138. But where the rule was extended to a suit that would not "interfere with the actual possession of property which the receiver holds," such a rule requiring permission from the appointing court before an action could be brought against a receiver in a different court was "unsupported by authority and unsound in principle." *Id.* at 141 (internal quotation marks omitted). The exception, currently codified at 28 U.S.C. § 959(a), reads: "Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property."

Our cases analyzing the interplay between the *Barton* rule and § 959(a) have most often involved bankruptcy trustees, and "the policies underlying the *Barton* doctrine apply with greater force to bankruptcy proceedings than to other proceedings involving receivers." *Beck v. Fort James Corp.* (*In re Crown Vantage, Inc.*), 421 F.3d 963, 971 (9th Cir. 2005). Moreover, many of these cases have dealt with a liquidating trustee, *see, e.g.*, *id.* at 968, a circumstance in which the *Barton* majority and Justice Miller agreed that the *Barton* rule should apply, *see Barton*, 104 U.S. at 131, 138.

**[5]** This case does not fit that pattern, however. The Receiver was not appointed to wind up or reorganize, in a bankruptcy sense, CDCR's operations. CDCR was and is an ongoing entity, continuing to operate. The Northern District assigned the Receiver "all powers vested by law in the Secretary of the CDCR as they relate to the administration, control, management, operation, and financing of the California prison

medical health care system." Thus, in short, the Receiver was the chief executive officer of the medical division of CDCR, a basic part of whose operation includes contracting with and managing those responsible for providing medical care to prisoners, such as MDI. *See Diners Club*, 421 F.2d at 397-98 (explaining that appellant's suit, for breach of contract due to a trustee's alleged negligent employment of an untrustworthy employee, "clearly was in respect of the Trustee's transactions in carrying on the debtor's business"). We have said that § 959(a) "applies only if the . . . officer is actually operating the business, and only to 'acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise.' " *In re Crown Vantage*, 421 F.3d at 971-72 (quoting *Muratore v. Darr*, 375 F.3d 140, 144 (1st Cir. 2004)). MDI is challenging the Receiver's conduct in operating CDCR's "business" in an ongoing or usual manner, as distinguished from actions taken in winding up an enterprise or supervising a bankruptcy reorganization. We conclude that this case fits that category of an ongoing, operating enterprise.

In granting the motion to dismiss the Receiver, the Eastern District cited *In re Crown Vantage*, 421 F.3d at 971-72, and wrote that "[d]espite its seemingly expansive language, § 959(a) is rarely employed and—when actually utilized by courts—even more narrowly applied." In the court's analysis, "the relatively small handful of cases interpreting § 959(a) restrict its application to instances where a receiver . . . has been sued in his/her capacity as an employer, or for torts committed by agents of the estate/business in receivership during the course of routine or day-to-day operations distinct from the receiver's official responsibilities." The Eastern District reasoned:

> [u]nlike the cases where leave was not required, [MDI]'s causes of action against [the Receiver] do not arise from tortious conduct or negligent acts pursuant to day-to-day, routine, or ordinary business

> operations unrelated to his official responsibilities. Rather, [MDI] challenges the very core of [the Receiver]'s authority and administration of the CDCR medical services system—i.e., duties explicitly prescribed in [the Northern District]'s creation of the receivership.

This is a misreading of *In re Crown Vantage* and of MDI's claim. While we remarked in *In re Crown Vantage* that "[t]he few examples of suits that have been allowed under § 959(a) include a wrongful death action filed against an operating railroad trustee and suits for wrongful use of another's property," this was a summary of successful § 959(a) suits, not a restriction on them. 421 F.3d at 972. Similarly, MDI does not challenge the authority of the Receiver over CDCR, only what happened in his day-to-day exercise of that authority.

An examination of one of the cases cited in *In re Crown Vantage* illustrates the applicability of § 959(a) here. In *Thompson v. Texas Mexican Railroad Company*, the Supreme Court explained that a lawsuit brought by one railroad against another and against the latter railroad's bankruptcy reorganization trustee, the essence of which was to get a more favorable rental payment for use of its tracks, qualified for the exemption under the statute that was the predecessor to § 959(a).[2] 328 U.S. 134, 136-37, 140-41 (1946). In reaching this conclusion, the Court reasoned that:

---

[2]As described in *Thompson*, that statute read:

> Every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such manager or receiver was appointed so far as the same may be necessary to the ends of justice.

328 U.S. at 138 n.3 (internal quotation marks omitted).

Operation of the trains is plainly a part of the trustee's functions. Claims which arise from their operation—whether grade crossing claims as in *McNulta v. Lochridge*, [141 U.S. 327 (1891)], or claims for the use of the tracks of another as in the present case—are claims based on acts of the trustee in conducting the business. Hence this suit, so far as it involves only a money claim against the estate for acts of the trustee in operating trains over respondent's tracks, could be maintained in the state courts against the trustee.

*Id.* at 138.

**[6]** The reach of § 959(a) is not limited to only those torts identified in *In re Crown Vantage*. The Supreme Court spoke of "claims" broadly, and we see no meaningful distinction between MDI's contract law claim and the torts cited in *Thompson. See also McNulta*, 141 U.S. at 332 ("As the right given by the statute to sue for the acts and transactions of the receivership is unlimited, we cannot say that it should be restricted to causes of action arising from the conduct of the receiver against whom the suit is brought or his agents."). MDI's action does not seek to challenge the Receiver's appointment or his authority over CDCR. MDI just wants to get paid. We conclude, therefore, that MDI's contract law causes of action fit within the statutory exception to *Barton*, and the lawsuit should not have been dismissed on the ground that the Northern District had not authorized its filing.

**[7]** The Eastern District has jurisdiction over MDI's suit against the Receiver and CDCR to the extent that it seeks an amount due under a contract. We note that this determination does not preclude the Eastern District from seeking to coordinate the matter in some fashion with the Northern District or even from transferring it to the Northern District, if otherwise appropriate. There may be good reason for involving the Northern District, but that does not mean that the case filed

in the Eastern District should be dismissed for lack of jurisdiction.

### C.   Immunity

MDI further argues that the Northern District erred in concluding that the Receiver is absolutely immune from MDI's claim. We agree.

We review the Northern District's conclusions of law regarding the Receiver's immunity de novo, while its findings of fact are reviewed for clear error. *See In re Castillo*, 297 F.3d at 946.

At the outset, we note that while it appears that MDI at one time sued the original receiver, Robert Sillen, in his individual capacity, it is currently suing the Receiver only in his official capacity, which presumably means only the current receiver, J. Clark Kelso. On appeal MDI has argued only that the Receiver is not entitled to immunity when sued in an official capacity. Indeed, the Receiver cannot be sued in his individual capacity for acts like those at issue here. "Actions against the receiver are in law actions against the receivership or the funds in the hands of the receiver, and his contracts, malfeasances, negligences, and liabilities *are official, and not personal*, and judgments against him as a receiver are payable only from the funds in his hands." *See McNulta*, 141 U.S. at 332 (emphasis added). The personal liability of either Sillen or Kelso is not at issue, and MDI cannot recover from either of them personally. Liability of the Receiver in his official capacity means, as a practical matter, payment can be obtained only from the funds of CDCR, as controlled by the Receiver.

We also note that we must take MDI's allegations as true at this stage of the litigation. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). There has been no factual adjudication. MDI alleges that it provided medical administrative ser-

vices to CDCR, that it did so properly under California law, that the Receiver directed that MDI not be paid, and that as a result MDI has not received payment or reimbursement for those services and the expenses it bore, including the costs of MDI's payments to the doctors and hospitals which directly provided the actual medical services. As far as we know, MDI's allegations may be true. At this point we have to assume as much.

Yet both the Receiver and CDCR have taken the position that MDI cannot pursue its claims against them in court because they are immune. The Receiver's immunity argument is that he is entitled to the same immunity as the Northern District court itself. He asserts that he is entitled to derivative absolute judicial immunity because the Northern District gave him power over contracting within CDCR's medical care system and his dealings with MDI were taken within this authority.

CDCR has similarly argued for full immunity. Before the Eastern District, CDCR successfully argued that it should be dismissed from MDI's action because the Receiver was dismissed and the claim against CDCR arose from CDCR's compliance with the Receiver's order. Before the Northern District, CDCR argued that it functioned as the Receiver's staff and was thus entitled to the same immunities conferred upon the Receiver. CDCR has apparently presented the same arguments before the state court in MDI's most recent lawsuit, which did not name the Receiver as a defendant. In particular, CDCR has argued to the state court that CDCR was ordered by the Receiver not to pay MDI's bills and that it cannot be held liable in state court for obeying the instructions of the Receiver appointed by the federal district court.[3]

---

[3]That argument was, at least initially, favorably received by the state court. That court issued a tentative ruling in which it proposed to grant CDCR's motion to dismiss on that ground. The tentative ruling explained:

The result which the Receiver and CDCR advocate is untenable. A receivership does not create a liability-free zone for the business or organization that is the subject of the receivership. If MDI has a valid claim, something we have to assume at this point, it cannot be left out in the cold with nowhere to turn.

At some level, the Receiver appears to understand this. His answering brief states that he "has never contended, and does not contend, that if he or an agent of the Receivership breaches a lawful contract with the Receivership, the Receivership has no liability." As a practical matter, though, that is precisely the position he has taken. He has suggested to us that recourse might be available against CDCR in state court, stating in the same brief that "[w]hether CDCR should be required to respond in damages because its officials facilitated MDI's incursion into the state prisons is a separate question for the state courts, not this Court, to answer." Yet while the Receiver points to CDCR, CDCR points to the Receiver. CDCR told the state court that the Receiver ordered it not to pay MDI and that, as a result, the state court cannot hold CDCR liable. CDCR succeeded in obtaining dismissal from the Eastern District lawsuit with a similar argument, without objection from the Receiver. That Catch-22 gambit cannot succeed.

---

> The failure to pay for services rendered, was based on the order of the federal court appointed Receiver . . . . Defendant CDCR cannot pay for services rendered in violation of the order of the Court appointed Receiver, as the CDCR was ordered by the federal court to fully cooperate with the Receiver in the discharge of his duties, which order makes the CDCR subject to contempt proceedings if it impedes the Receiver. As the Receiver ordered CDCR not to pay MDI's bills, CDCR is unable to pay MDI.

The state court ultimately elected not to enter an order to that effect, instead staying the action pending the resolution of this appeal.

Assuming that MDI has a valid claim, some courthouse door should be open to it. It would be possible to let claims against CDCR simply proceed against CDCR, presumably in state court, without directly involving the Receiver or requiring him to be named as a party. Indeed, we have been informed that some legal actions, such as individual suits by prisoners complaining about medical services provided to them, have been treated that way. Any award against the Receiver in his official capacity would be paid from CDCR funds, anyway, so the end result of an action in state court would be the same.

**[8]** But the position taken by CDCR rules out that route for MDI's claim. The Receiver holds "all powers vested by law in the Secretary of the CDCR as they relate to the administration, control, management, operation, and financing of the California prison medical health care system." That necessarily includes the power to control CDCR with regard to paying MDI. CDCR has asserted that it refused to pay MDI on instructions from the Receiver and that as a result the state court cannot order such payment. The Receiver cannot shrug off responsibility either for CDCR's refusal to pay MDI or for the position CDCR has taken in litigation on that subject. The Receiver is an appropriate target for MDI's claim.

**[9]** Nor is the Receiver immune, in an official capacity, from a claim such as this simply because he was appointed by a court. The federal statute discussed above in connection with the purported requirement that the appointing court approve any action against a receiver, 28 U.S.C. § 959(a), plainly contemplated that a receiver would be subject to suit, despite the fact that, by definition, the receiver was appointed to the position by a court acting in its judicial capacity. So, too, did the Supreme Court in its decisions treating a receiver as an embodiment of the company or enterprise he was appointed to oversee and recognizing that he might be sued in place of the company. *See McNulta*, 141 U.S. at 331-32 ("If actions were brought against the receivership generally, or

against the corporation by name, 'in the hands of' or 'in the possession of' a receiver, without stating the name of the individual, it would more accurately represent the character or *status* of the defendant."), *id.* at 332 ("Actions against the receiver are in law actions against the receivership . . . . As the right given by the statute to sue for the acts and transactions of the receivership is unlimited, we cannot say that it should be restricted to causes of action arising from the conduct of the receiver against whom the suit is brought or his agents."); *see also Thompson*, 328 U.S. at 138 (explaining that a suit against a trustee for operation of the estate's trains could be maintained against the trustee under § 959(a)'s predecessor statute); *Atl. Trust Co. v. Chapman*, 208 U.S. 360, 370 (1908) ("Immediately upon . . . appointment and . . . qualification of the receiver, the property passed into the custody of the law, and thenceforward its administration was wholly under the control of the court by its officer or creature, the receiver.").

**[10]** Based on the order of the Northern District, the Receiver took charge of CDCR and all of its assets. In this position he has managed CDCR as an ongoing enterprise. He is not automatically entitled to immunity when sued, under § 959(a), for acts taken in operating CDCR in a usual manner. MDI's claim does not challenge his authority as a Receiver, nor does it seek to recover for any act for which specific instructions were received from the court.[4] The Northern District could not simply declare CDCR immune from legal obligations. Neither could it assign plenary power to the Receiver to refuse to permit CDCR to pay its legal obligations. Judicial immunity does not extend to everything a receiver may do in

---

[4]As we have remarked before in a somewhat similar situation, "We . . . find noteworthy that [the Receiver] did not argue before the district court, or in his brief before this court, that he sought instruction or guidance or even brought the precise legal question to the attention of the [Northern District] court." *United States v. Hemmen*, 51 F.3d 883, 891 (9th Cir. 1995).

the course of performing his responsibilities or to every kind of lawsuit that might be filed against a receiver in an official capacity. *See Forrester v. White*, 484 U.S. 219, 229-30 (1988) (holding that a judge's discharge of a probation officer was an administrative action that did not allow for absolute immunity); *United States v. Hemmen*, 51 F.3d 883, 891-92 (9th Cir. 1995) (holding that a bankruptcy trustee is not entitled to judicial immunity for failing to honor an IRS levy).

[11] The authorities cited by the Northern District in support of its contrary conclusion are distinguishable because they deal with a different kind of challenge. In *New Alaska Development Corporation v. Guetschow*, for example, the receiver was sued by those whose property was the subject of the receivership. 869 F.2d at 1299; *see also Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1386-87 (9th Cir. 1987) (involving a bankruptcy trustee but otherwise presenting the same situation). In such a case the plaintiffs were effectively challenging the appointment itself and the receiver's authority to act generally. *See New Alaska Dev. Corp.*, 869 F.2d at 1300-05; *Mullis*, 828 F.2d at 1390-91; *see also Balser v. Dep't of Justice*, 327 F.3d 903, 910 (9th Cir. 2003) ("[I]t is important to note that most of the acts that the Balsers allege were unlawful . . . were approved by the bankruptcy court."). In contrast, here, where MDI is seeking damages for the Receiver's refusal to pay for services MDI performed under contract with CDCR, MDI is doing no more than challenging the Receiver's specific actions in operating CDCR as an ongoing enterprise. A receiver is not immune in his official capacity from such a claim.

## III.   Conclusion

[12] We affirm the Eastern District's exercise of jurisdiction over MDI's suit after the Receiver removed the case under 28 U.S.C. § 1442(a). We reverse, however, the Eastern District's dismissal of that action based on its holding that the statutory exception to the *Barton* rule does not apply. Section

959(a) encompasses a contract law claim like that brought against the Receiver and CDCR by MDI. We also reverse the Northern District's holding that the Receiver has absolute immunity when sued in his official capacity.

We remand the action previously pending in the Eastern District back to that district court. In doing so, though, we note that nothing in this opinion prevents the Eastern District from coordinating with or, if appropriate, transferring the action to the Northern District.

**AFFIRMED in part; VACATED in part; REMANDED to the U.S. District Court for the Eastern District of California.**