In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2669

RICKEY COLEMAN,

*Plaintiff-Appellee,*

*v.*

EARL DUNLAP, Transitional Administrator of the
Cook County Juvenile Temporary Detention Center,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 2388—**James F. Holderman**, *Chief Judge*.

ARGUED MARCH 26, 2012—DECIDED AUGUST 22, 2012

Before EASTERBROOK, *Chief Judge*, and BAUER and
WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*.  Rickey Coleman was fired
from the Cook County Juvenile Temporary Detention
Center in 2007. Coleman was told that his position
had been eliminated because of budget cuts; he
contends that his politics were the real cause for his
discharge and a later decision not to rehire him. Most

adverse actions based on a public employee's speech violate the first amendment, and no one contends that Coleman's job is in the category for which politics is a legitimate consideration. See *Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990). Coleman seeks damages under 42 U.S.C. §1983 against a number of people, including Earl Dunlap, the Transitional Administrator of the Center. He also invokes the *Shakman* consent decrees, which allow parties aggrieved by certain kinds of patronage in Cook County to seek redress through civil contempt proceedings. See, e.g., *O'Sullivan v. Chicago*, 396 F.3d 843 (7th Cir. 2005); *Shanahan v. Chicago*, 82 F.3d 776 (7th Cir. 1996).

Dunlap filed a motion to dismiss, asserting among other things that absolute immunity shields him from Coleman's claims. The district judge dismissed the claim under §1983, ruling that Dunlap is a federal rather than a state actor, but declined to dismiss the *Shakman* claim. The court held that Dunlap is not protected by absolute immunity. 2011 U.S. Dist. LEXIS 66543 (N.D. Ill. June 22, 2011). Dunlap filed this interlocutory appeal on the immunity question; the rest of the judge's rulings are not before us. We have jurisdiction under 28 U.S.C. §1291. See *Mitchell v. Forsyth*, 472 U.S. 511 (1985).

In 2002 the Juvenile Detention Center and a group of inmates settled a case that we call the "2002 Litigation." The district court retained jurisdiction over implementation of the settlement—which the parties to both the 2002 Litigation and this case treat as a consent de-

cree—and in 2007 appointed Dunlap as the Transitional Administrator of the Center. Although the 2002 Litigation concerned prison conditions, the 2007 order gave Dunlap plenary authority to "oversee, supervise, and direct all management, administrative, financial, contractual, personnel, security, housing, custodial, purchasing, maintenance, technology, health services, mental health services, food and laundry service, recreational, educational, and programmatic functions relating to the operation of the [Center] consistent with the authority vested in the position of Superintendent of the [Center]". *Doe v. Cook County*, No. 99 C 3945 (N.D. Ill. Aug. 14, 2007). The order also stated that Dunlap would be immune from suit for any action he took as Administrator. It originally provided for "absolute immunity from liability"; on Dunlap's motion the language was amended to read: "[Dunlap] and his staff shall have the status of officers and agents of this Court and as such shall be vested with the same immunities as vest with this Court."

In response to Coleman's suit, Dunlap asserted that the language in the 2007 order provided him with absolute immunity and that he also is entitled to "quasi-judicial immunity" because he had exercised authority granted to him by a court. The district judge rejected both lines of argument, holding that Dunlap's decisions were administrative rather than judicial (or "quasi" judicial). 2011 U.S. Dist. LEXIS 66543 at *9–23. Even if Dunlap could have relied on the broader pre-amendment immunity language, he would have fared no better; judges do not have the authority to grant immunity for

unlawful acts. See *Tower v. Glover*, 467 U.S. 914, 922–23 (1984).

The doctrine of absolute immunity protects the integrity of the judicial process by ensuring that timorous judges can act on their best view of the merits, rather than trying to limit harassment by disappointed litigants. See *Forrester v. White*, 484 U.S. 219, 225 (1988). Immunity also allows all judges to conserve (for the benefit of other litigants) time that otherwise would be spent dealing with those harassing suits. Parties who, although not judges, engage in adjudication (such as private arbitrators or administrative tribunals) or execute the orders of judges (such as police officers executing a bench warrant, or a party executing a judicially-ordered sale) also enjoy absolute immunity. See *Snyder v. Nolen*, 380 F.3d 279, 286–87 (7th Cir. 2004). Dunlap believes that, had the district judge in the 2002 Litigation maintained direct control of the Center and approved Coleman's firing, the judge would have been entitled to immunity. Dunlap argues that he should be entitled to absolute immunity as well because he was acting in the judge's stead.

In support of his position Dunlap invokes cases where federal judges "[found] it necessary to administer a business, or a school district, or an entire prison system to effectively remedy a wrong." *Holloway v. Walker*, 765 F.2d 517, 525 (5th Cir. 1985) (a judge who took control of an oil business is absolutely immune). Dunlap asserts that no one has questioned the immunity of judges when exercising managerial authority

and that this case is the same (except for the fact that Dunlap is not a judge).

Unfortunately for Dunlap, one body *has* questioned this line of cases: the Supreme Court of the United States. In *Forrester* a judge fired a probation officer. The officer sued, alleging that the judge had engaged in sex discrimination; the judge responded by asserting absolute immunity. The Court held that judges have immunity only for the decisions they make as adjudicators, not the decisions they make as administrators; firing someone is an administrative act, so the judge was not protected by absolute immunity. 484 U.S. at 229–30.

*Forrester* involved a judge's administration of his court, rather than a judge's administration of some other institution. Dunlap contends that *Forrester* does not apply to administrative acts taken "in connection with a case". But *Forrester* is not as narrow as Dunlap contends; we must "draw the line between truly judicial acts, for which immunity is appropriate, and acts that simply happen to have been done by judges". *Id.* at 227. Dunlap concedes that none of his duties is judicial in nature and that employment decisions are not "adjudication". What's more, the question whether a complaining party had "dealt with the judge [or his agent] in his judicial capacity" was important even before *Forrester*. See *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Dunlap concedes that the decisions about which Coleman complains were not made by anyone acting in a judicial capacity. This means that he is not entitled to absolute immunity.

Suppose the judge had maintained control of the 2002 Litigation rather than appointing Dunlap as a substitute warden. The judge would not have issued an order firing Coleman. The 2002 Litigation concerned conditions encountered by prisoners, not who filled which position in the prison's bureaucracy. Dunlap therefore cannot say that he was just doing something that the judge might have done. It is conceivable that a judge could have determined that employees' qualifications affect inmates' conditions of confinement and issued an order that employees must meet some requirement such as having a college degree, completing a certain level of training, or achieving a certain score on a test. Had Dunlap proceeded to fire any employees who failed to meet a requirement in such an order, he would be entitled to immunity unless a reasonable person would have recognized that the order was invalid. See *Malley v. Briggs*, 475 U.S. 335, 345–46 (1986). Thus if a judge had set a political test for employment as a prison guard or clerk, an administrator implementing that order would be liable, because the Supreme Court held more than a generation ago that no public official can use politics to hire and fire workers for such positions, and a district judge's order to the contrary would be transparently invalid. Coleman's complaint alleges that Dunlap held his politics against him; since Dunlap could not have done that even with judicial permission, he cannot be entitled to immunity when he made the decision on his own.

Dunlap relies on *Ashbrook v. Hoffman*, 617 F.2d 474 (7th Cir. 1980). In *Ashbrook* the district judge ordered a

partition sale and appointed commissioners to conduct it. The plaintiffs sued the commissioners, alleging that they had mismanaged the sale, to plaintiffs' financial detriment. We held that the commissioners' acts in connection with the sale received absolute immunity because those acts were "intimately related to the judicial process". *Id*. at 476, 477 & n.4. Dunlap argues that his actions as Administrator likewise were "intimately related to the judicial process". There is doubtless a relation, though whether it is an "intimate" one is debatable. But the idea that any claim based on an act "intimately related to the judicial process" is barred by absolute immunity did not survive *Forrester*. See *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993).

After *Forrester* some of the commissioners' actions in *Ashbrook* may have been protected by the rule in *Malley*: the commissioners were, after all, ordered to conduct the sale. But only the ends of the order—not the means used to execute the order—are protected by an order to sell (unless the order directs the commissioners to use specific means). See *Richman v. Sheahan*, 270 F.3d 430, 437 (7th Cir. 2001) (holding that immunity is available only to the extent necessary to protect compliance with a judicial order, and that an order not specifying the means of implementation does not protect a person who uses means that violate some other rule of law).

Dunlap falls on the wrong side of the *Richman* line. It is true that the appointment order granted Dunlap the

power to "establish personnel policies; to create, abolish, or transfer positions; and to hire, terminate, promote, transfer, and evaluate management and staff of the [Center]." The order did not, however, direct Dunlap to adopt any particular personnel plan, and it certainly did not direct Dunlap to make any specific employment decisions or use political criteria. So any employment decision was, at best, a means to the court-ordered end of improving inmates' welfare.

Any doubt on this point is stilled by one of Dunlap's defenses on the merits. He argued in the district court that he had no role in the decision to fire Coleman (which occurred before his appointment) and that he did not act "knowingly or with deliberate or reckless disregard concerning Coleman's inability to be rehired at the [Center]" but simply ratified decisions by his subordinates. If Dunlap was not personally involved with the employment decisions, or was a cat's paw of someone else who held a political grudge, cf. *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011), that would be a substantive problem with Coleman's claim against Dunlap—for there is no vicarious liability for a subordinate's acts, see *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009)—but it also means that Dunlap was not just carrying out judicial orders.

Dunlap asserts that receivers are protected by absolute immunity as long as they act within the scope of the order creating the receivership, and he maintains that he is entitled to the same protection because the Juvenile Detention Center is essentially under receivership. See,

e.g., *Property Management & Investments, Inc. v. Lewis*, 752 F.2d 599 (11th Cir. 1985). All but one of the cases he relies on for this proposition—*New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298 (9th Cir. 1989)—predate *Forrester*. *New Alaska Development* arguably adopted Dunlap's reading of *Forrester*, see 869 F.2d at 1303 n.6, though the ninth circuit has limited *New Alaska* to situations in which an owner contests the very appointment of a receiver. See *Medical Development International v. California Department of Corrections*, 585 F.3d 1211, 1222 (9th Cir. 2009). Some cases after *Forrester* have stated that receivers are protected by absolute immunity without dealing with the distinction between adjudication and administration. One such case, *Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995), did not cite *Forrester*. See also *In re Cedar Funding, Inc.*, 419 B.R. 807, 823 (9th Cir. BAP 2009); *Roland v. Phillips*, 19 F.3d 552, 555 (11th Cir. 1994); *Teton Millwork Sales v. Schlossberg*, 311 Fed. App'x 145, 150 (10th Cir. 2009). *Forrester* tells us that Dunlap's administrative acts are not protected by absolute immunity even though Dunlap was acting within the scope of his authority. Accord, *Medical Development International*, 585 F.3d at 1119–22.

Unqualified language to the effect that receivers are immune from liability was not accurate even before *Forrester*. Bankruptcy trustees, for example, can be held personally liable for willful breaches of fiduciary duty. See, e.g., *In re Chicago Pacific Corp.*, 773 F.2d 909, 915 (7th Cir. 1985). If a trustee were entitled to absolute immunity for his administrative acts, a debtor-in-possession would be too. See 11 U.S.C. §1107(a). But the

managers of a private company in Chapter 11 would not be immune from claims under the Americans with Disabilities Act, Title VII, or any other provision of law. Nor would the administrators of a municipality that has filed for reorganization under Chapter 9 be immune from claims under §1983 if they engaged in patronage hiring. Dunlap is not entitled to greater protection.

There may be many problems with Coleman's complaint against Dunlap, but absolute immunity is not one of them. The district court's decision is

AFFIRMED.